STAN G. ROMAN (SBN 87652) (sroman@kksrr.com)
TRACY M. CLEMENTS (SBN 184150) (tclements@kksrr.com)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone: (415) 249-8330
Facsimile: (415) 249-8333

Attorneys for Third Party
DOUGLAS DUNCAN

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA CLARA VALLEY HOUSING GROUP, INC. and KRISTEN M. BOWES,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant | Case No.: 5:08-cv-05097 HRL<br><br>**DOUGLAS DUNCAN'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY DOUGLAS DUNCAN TO TESTIFY**<br><br>Date: December 7, 2010<br>Time: 10:00 a.m.<br>Dept.: Courtroom: 2, 5th Floor<br>Judge: Hon. Howard R. Lloyd |

**TABLE OF CONTENTS**

Page No.

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS .......................................................................................2

    A. The Nature of This Case. ............................................................................2

    B. Government Accusations Regarding the Illegality of SC2.........................3

    C. Government Refusal to Provide Douglas Duncan and Other Former KPMG Employees With Comfort That They Will Not Be Criminally Charged. ................5

III. ARGUMENT............................................................................................................7

    A. The Fifth Amendment Protects Citizens From Being Compelled to Make Statements That Could Directly or Indirectly Be Used Against Them. ........7

    B. Mr. Duncan Need Not Show an Active Investigation or Even That Prosecution Is "Probable"; He Need Only Show a "Realistic Possibility" That His Statements Could Be Used Against Him. .................................8

    C. Plaintiffs' Motion Does Not Establish That the Statute of Limitations Has Run on Possible Criminal Charges. ................................................11

    D. It Is Proper For a Witness to Present His Basis for Assertion of the Fifth Amendment In Opposition to a Motion to Compel. .............................13

IV. CONCLUSION......................................................................................................14

i

DOUGLAS DUNCAN'S OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY DOUGLAS DUNCAN TO TESTIFY
CASE NO.: 5-08-cv-05097 HRL

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Andover Data Services v. Statistical Tabulating Corp.*,
    876 F.2d 1080 (2d Cir. 1989)...............................................................................................8

*Baker v. Limber*,
    647 F.2d 912 (9th Cir. 1981) .........................................................................................13, 14

*Brunswick Corp. v. Doff*,
    638 F.2d 108 (9th Cir. 1981) ...............................................................................................8

*Davis v. Fendler*,
    650 F.2d 1154 (9th Cir. 1981).............................................................................................13

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) ................................................................................................10

*Emspak v. United States*,
    349 U.S. 190 (1955).............................................................................................................13

*Fiswick v. United States*,
    329 U.S. 211 (1946).............................................................................................................12

*Grunewald v. United States*,
    353 U.S. 391 (1957)...............................................................................................................7

*HAL, Inc. v. United States*,
    196 B.R. 159 (B.A.P. 9th Cir. 1996)..................................................................................10

*Hoffman v. United States*,
    341 U.S. 479 (1951)...............................................................................................................8

*In re Gault*,
    387 U.S. 1 (1967)...................................................................................................................7

*McCoy v. Comm'r*,
    696 F.2d 1234 (9th Cir. 1983) ............................................................................................10

*NLRB v. Trans Ocean Export Packing, Inc.*,
    473 F.2d 612 (9th Cir. 1973) ............................................................................................7, 8

*Pillsbury Co. v. Conboy*,
    459 U.S. 248 (1983)...............................................................................................................8

*United States v. Butler*,
    792 F.2d 1528 (11th Cir. 1986) .........................................................................................12

*United States v. Coia*,
    719 F.2d 1120 (11th Cir. 1983) .........................................................................................12

ii

DOUGLAS DUNCAN'S OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY DOUGLAS DUNCAN TO TESTIFY
CASE NO.: 5-08-cv-05097 HRL

*United States v. Goodyear*,
    649 F.2d 226 (4th Cir. 1981) ...................................................................................12

*United States v. Hubbell*,
    530 U.S. 27 (2000) ..................................................................................................7

*United States v. Mennuti*,
    679 F.2d 1032 (2d Cir. 1982) ..................................................................................12

*United States v. Northern Imp. Co.*,
    814 F.2d 540 (8th Cir. 1987) ..................................................................................12

*United States v. Stein*,
    435 F. Supp. 2d 330 (S.D.N.Y. 2006) ...............................................................5, 11

*United States v. Thompson*,
    518 F.3d 832 (10th Cir. 2008) ................................................................................12

*United States v. Walker*,
    653 F.2d 1343 (9th Cir. 1981) ................................................................................12

**Statutes**

18 U.S.C. § 371 ...............................................................................................................4, 11

Internal Revenue Code § 6531 ...........................................................................................10

**Rules**

26 C.F.R. § 1.6011-4(b)(2) ...................................................................................................4

Civil Local Rule 37 ...............................................................................................................1

Standing Order Re: Initial Case Management and Discovery Disputes, Rule No. 6 .............1

iii

DOUGLAS DUNCAN'S OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY DOUGLAS DUNCAN TO TESTIFY
CASE NO.: 5-08-cv-05097 HRL

Douglas Duncan, by counsel, respectfully opposes the Plaintiffs' Motion to Compel Third-Party Douglas Duncan to Testify.

## I. INTRODUCTION

The Justice Department alleges that for a period of time up until at least 2005, KPMG was engaged in a wide-ranging and illegal practice of selling abusive tax shelters to its clients. The Government has already indicted seventeen former KPMG employees.

This case involves what the Government contends is one of KPMG's abusive tax shelters. The Government has alleged that former KPMG employee Douglas Duncan played a "central role" in connection with this tax strategy.

Mr. Duncan and other former KPMG employees were subpoenaed by the Government to testify in deposition in this case. Counsel sought assurance from the Government that there was no criminal investigation concerning the tax strategy at issue here. No assurance was provided. Counsel asked for immunity before testifying. Immunity was refused.

As a result, at least four of the former KPMG witnesses, all represented by experienced counsel, asserted their rights under the Fifth Amendment not to testify about what the Government contends is an illegal tax shelter.[1]

The taxpayers brought this case to prove that the tax strategy involved was not improper. They are concerned about the Government's expressed intention to request that adverse inferences be drawn at trial from the KPMG witnesses' assertion of their Constitutional rights. They therefore brought this motion to compel. However, their motion does not come close to making the case that

---

[1] Plaintiffs filed motions to compel against the other three former KPMG employees in the Central District, where their subpoenas were issued. However, on November 16, 2010, Central District Magistrate Judge Olguin denied the plaintiffs' motion without prejudice for failure to comply with the meet-and-confer and joint stipulation requirements of that court's Civil Local Rule 37. *See* Clements Decl., Exh. L. Similarly in this case, plaintiffs have failed to comply with the Court's Standing Order Re: Initial Case Management and Discovery Disputes, Rule No. 6, which requires the moving party to "in good faith confer with counsel for the party failing to make the discovery in an effort to resolve the dispute without court action" and to submit a "declaration setting forth these meet and confer efforts, and the final positions of each party" with its moving papers. The day before the motion was filed, plaintiffs' counsel told Mr. Duncan's counsel that it was being filed, but plaintiffs have not otherwise complied with Rule No. 6.

Mr. Duncan and the other former KPMG employees have no credible fear of prosecution. The taxpayers' argument boils down to assertions that (1) there has not yet been any "public" indictment of anyone on this particular tax strategy; and (2) the transaction that these specific taxpayers entered into occurred ten years ago and there is a six year statute of limitations.

Unfortunately, those arguments are insufficient. Just because there has not yet been an indictment on this tax strategy does not mean there could not be one. The Government has already declared the strategy an abusive and unlawful tax shelter. They could decide to indict after obtaining compelled testimony from the former KPMG employees whom they contend are responsible for the strategy. Conspicuously absent from the Government's "Non-Opposition" to this motion is any statement that the Government does not have any interest in charging the former KPMG witnesses with crimes.

As to the statute of limitations, the Government has already alleged that KPMG and its employees engaged in a conspiracy of selling abusive tax shelters, and that the conspiracy lasted until at least 2005, which is within the six year statute of limitations. Moreover, the statute of limitations does not begin to run on conspiracy charges until the last overt act of any of the conspirators. Thus, when these particular taxpayers actually entered into their transaction is irrelevant to the running of the statute of limitations on a potential criminal conspiracy charge.

For these reasons, Mr. Duncan appropriately followed his counsel's advice to invoke his Fifth Amendment right not to testify about the substance of the tax strategy involved in this case.

## II. STATEMENT OF FACTS

### A. The Nature of This Case.

Plaintiffs Santa Clara Valley Housing Group, Inc. ("Santa Clara") and Kristen M. Bowes ("Bowes") filed this case seeking a refund of taxes they allege were improperly assessed by the IRS for, in Santa Clara's case, the taxable year ending December 31, 2000 (Clements Decl., Ex. A, Compl. at ¶ 6(a)), and in Bowes' case, the taxable years ending December 31, 2000, 2001, 2002, and

2003. *Id.* at ¶ 6(b).[2] Collectively, plaintiffs seek approximately $5.1 million, plus interest. *Id*. at p. 10, ¶¶ 1, 2.

The case involves a tax strategy known as the S-Corporation Charitable Contribution Strategy ("SC2") sold to clients by KPMG.[3] The IRS disallowed plaintiffs' claimed tax benefits from SC2 and assessed penalties. *See* United States' Non-Opposition and Response to Motion to Compel Testimony of Douglas Duncan ("Non-Opp.") at 2.

Although the plaintiffs' original transaction raising tax issues was set up over a decade ago, many of the substantive financial events relating to the transaction occurred more recently. For example, the exercise of one of the central features of the transaction, a stock redemption agreement, did not occur until January 2005. Clements Decl., Ex. A, Compl. at ¶ 7(m). Additionally, the IRS Notices of Deficiency, which were paid by plaintiffs, were dated September 1, 2006, and plaintiffs' request for refunds of those payments occurred in 2007.[4] *Id.* at ¶¶ 6(a)(ii)-(iii); 6(b)(ii)-(iii).

Douglas Duncan was an employee of KPMG and, according to the Government, was part of the KPMG "team" that was responsible for SC2, and "played a central role" with respect to the transaction. *See* Non-Opp., pp. 3-4.

### B. <u>Government Accusations Regarding the Illegality of SC2.</u>

In 2003, the U.S. Senate Permanent Subcommittee on Investigations ("PSI") commenced an investigation into the "The Role of Professionals in the U.S. Tax Shelter Industry." The Senate investigation culminated in a 2005 report. Clements Decl., Exh. B (*The Role of Professional Firms in the U.S. Tax Shelter Industry*, S. Rept. No. 109-54). In that report, the PSI highlighted four tax strategy products sold by KPMG, including SC2. The report referred to all four products as "abusive tax shelters" (*id.* at 1), and "elaborate tax avoidance schemes." *Id.* at 127 n.568. During the

---

[2] The facts herein are derived from the sources indicated, and are assumed for the sake of argument. Mr. Duncan, who continues to assert his Fifth Amendment right not to provide evidence regarding these matters, does not intend by this opposition brief to admit any facts.

[3] The tax product SC2 is called "SC-squared."

[4] September 11, 2007 for Santa Clara and September 26, 2007 for Bowes.

hearings, Senator Levin called SC2, in particular, "a sham." Clements Decl., Exh. C (*The U.S. Tax Shelter Industry: The Role of Accountants Lawyers and Financial Professionals, before the Perm. Subcom. on Invest., Com. On Gov. Aff'rs*, 108th Cong., S. Hrg. 108-473 at 8 (opening statement of Sen. Levin)).

In an April 26, 2004 bulletin, the IRS designated SC2 as a "Listed Transaction," officially notifying taxpayers and their representatives that the "claimed tax benefits purportedly generated by these transactions are not allowable for federal income tax purposes" and "warn[ing] of potential penalties that may be imposed if taxpayers participate in such a transaction." Clements Decl., Exh. D (IRS Bulletin No. 2004-17). Taxpayers were advised that if they had engaged in an SC2 transaction, they were required to notify the IRS that they had done so. *See* 26 C.F.R. § 1.6011-4(b)(2).

On August 24, 2005, the United States indicted eight former KPMG employees[5] for conspiracy to defraud the United States in violation of 18 U.S.C. § 371, based on their design, marketing, and implementation of tax-avoidance schemes. Clements Decl., Exh. E. The case was later expanded by superseding indictment to nineteen defendants (seventeen of whom were former KPMG employees) and 45 additional counts of tax fraud and obstructing the IRS. *See* Clements Decl., Exh. I. The indictment claimed that the fraudulent tax shelter schemes specifically identified in the indictment were but a subset of a larger group of fraudulent tax products sold by KPMG. *Id.* at ¶18 ("<u>Among</u> the fraudulent tax shelter transactions designed, marketed, and implemented by the defendants . . . .and their co-conspirators were FLIP . . . , OPIS . . . , BLIPS . . . , SOS . . ., and their variants.") (emphasis added). As the criminal case proceeded, the Government made clear that it had indentified in its indictment only some, but not all, of the KPMG tax structures that it believed were criminal. *See* Clements Decl., Exh. F and G (motion of United States seeking the admission into evidence of "other crimes" relating to tax strategies not identified in the indictment).

---

[5] We use the term "employees" in this brief for ease of reference, recognizing that many of those indicted were former KPMG partners.

On August 29, 2005, KPMG and the Government entered into a Deferred Prosecution Agreement ("DPA") under which the Government agreed to seek dismissal of criminal charges against KPMG provided that it – among other conditions – agreed to "cooperate extensively" with the prosecution of criminal charges against former KPMG employees. Clements Decl., Exh. H (*United States v. Stein*, 435 F. Supp. 2d 330, 349 (S.D.N.Y. 2006)).

The Government continues to contend that the SC2 transaction involved in this case was an illegal and "abusive" tax shelter scheme. Non-Opp. at 3, n.4. In Mr. Duncan's deposition, the accusatory nature of the Government's questions cannot be mistaken. A few examples:

> "Q: So isn't it true, Mr. Duncan, that as contemplated by Mr. Smith, there's going to have to be documentation as to other purported reasons to do the S-C2 strategy, correct?...But it was understood by KPMG and its clients that those other purposes were pretext, right?" Fisk Decl. In Support of Motion to Compel, Exh. B (Duncan Depo. at 65).

> "Q: But everyone who implemented the strategy understood that there was really no nontax valid business purpose for that, was there?" *Id.* at 82.

> "Q: Do you recall if part of your due diligence in locating tax exempt organizations was to attempt to find tax exempt entities that would so-called "play ball," and not cause trouble for KPMG clients?" *Id.* at 88.

> "Q: Did this IRS inquiry and any resulting disclosures have anything to do with whether – well, with your leaving KPMG?" *Id.* at 102.

### C. <u>Government Refusal to Provide Douglas Duncan and Other Former KPMG Employees With Comfort That They Will Not Be Criminally Charged.</u>

The Government takes the position in responding to this motion that it does not oppose an order from this Court compelling Mr. Duncan to give up his Fifth Amendment rights and testify. If there were truly no risk to Mr. Duncan in doing so, then Government should have no problem offering Mr. Duncan immunity. But the government has made no such offer. In fact, conspicuously absent from the "Non-Opposition" filed by the Government is any statement indicating that the Government is not, in fact, either interested in charging Mr. Duncan with a crime, or open to that possibility depending upon what testimony he or others may give in this case.

The Government has maintained this position throughout these proceedings. The Government attorneys handling this case first contacted counsel for Mr. Duncan to arrange for his

WITNESS DOUGLAS DUNCAN'S OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY DOUGLAS DUNCAN TO TESTIFY
CASE NO.: 5-08-cv-05097 HRL

deposition early this year. Roman Decl., ¶ 2. As a preliminary matter, counsel for Mr. Duncan asked for an assurance from the Government that there was no criminal investigation occurring involving SC2, and that Mr. Duncan was considered by the Government to be only a third party witness to this civil case, and not a subject or target of any criminal investigation. *Id.* The Government's counsel refused to provide any such assurance. Instead, they suggested that Mr. Duncan's counsel might wish to contact one of the lead prosecutors in the Southern District of New York who had prosecuted other former KPMG employees for allegedly abusive tax shelters. *Id.*

Similarly, counsel for another of the alleged former KPMG SC2 "team" members, Larry Manth, repeatedly requested that the Government provide Mr. Manth with statutory immunity before he testified in deposition in this case. Toensing Decl., ¶ 4. In response, the Government directed Mr. Manths' counsel to contact the SDNY prosecutor – not to request immunity, but to "make inquiries as to the present status of any investigation against [his] client." *Id.*

In a March 16, 2010 letter, plaintiffs' attorneys told counsel for Mr. Manth that they had requested that "the Government issue a letter that neither the SC2 transaction nor Mr. Manth are under any criminal investigation …" *Id.* at ¶ 7 and Exh. C. The request for assurances of no investigation came in a March 12, 2010 letter from the Plaintiffs' counsel to the Government:

> Our understanding is that the SC2 transaction was never under any investigation, criminal or otherwise, by the Department of Justice and that the Department can and should inform the deponents that there is no actual or potential criminal investigation regarding them, any prior involvement they may have had with the SC2 transaction nor regarding the SC2 transaction, so discovery can timely proceed.

*Id.* at ¶ 5 and Exh. A. The Government responded on April 13, 2010 stating "you indicated that the SC2 transaction was never under any criminal investigation by the Department of Justice. We do not know the basis for this understanding. Neither of us are [*sic*] aware of the full scope of the criminal investigation relating to KPMG and its tax shelter products." *Id.* at ¶ 6 and Exh. B.

Against this background, Mr. Duncan was deposed by the Government on July 30, 2010. He answered various questions about his background, his employment at KPMG, etc. Upon advice of counsel, Mr. Duncan asserted his Fifth Amendment rights in response to questions having to do with

the SC2 transaction. The Government did not challenge Mr. Manth's assertion of his Fifth Amendment rights at the deposition, nor did counsel for either the Government or the plaintiffs ask Mr. Duncan or his counsel for any explanation of his basis for asserting his Fifth Amendment rights. *See* Fisk Decl. In Support of Motion to Compel, Exh. B (Duncan Depo. at 7-8, 11-12, 128-129).

Three other former KPMG employees have also been deposed in this case and, upon the advice of experienced counsel, have asserted their Fifth Amendment rights. As explained in the plaintiffs' and Government's briefs, plaintiffs have also moved to compel their testimony, in the Central District of California where their subpoenas were issued. The Central District motion has been denied without prejudice due to plaintiffs' failure to comply with local meet and confer requirements (which were not followed here, either). Clements Decl., Exh. L.

### III. ARGUMENT

#### A. The Fifth Amendment Protects Citizens From Being Compelled to Make Statements That Could Directly or Indirectly Be Used Against Them.

"No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "[O]ne of the basic functions of the [5th Amendment] privilege is to protect *innocent men*." *Grunewald v. United States*, 353 U.S. 391, 421 (1957) (emphasis added). The privilege against self-incrimination extends to compelled statements in civil proceedings that may lead to criminal prosecution. *николи NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 617 (9th Cir. 1973) ("The privilege against self-incrimination can be claimed in any proceeding, whether criminal or civil, administrative or judicial, investigatory or adjudicatory.") (citing *In re Gault*, 387 U.S. 1, 47-48 (1967)).

Additionally, the Fifth Amendment's protection "encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence." *United States v. Hubbell*, 530 U.S. 27, 37 (2000). "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in

the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (cited with approval in *Hubbell, supra*).

### B. Mr. Duncan Need Not Show an Active Investigation or Even That Prosecution Is "Probable"; He Need Only Show a "Realistic Possibility" That His Statements Could, At Some Point, Be Used Against Him.

To reject a claim as important as a citizen's Fifth Amendment rights, a court must find that "under the circumstances, the witness [does] not reasonably apprehend that the disclosures he is called upon to make **could** be used against him in a criminal prosecution or **could** lead to other evidence that might be so used." *Trans Ocean Export Packaging*, 473 F.2d at 617 (emphasis added, citations omitted). There is no requirement there be an active investigation; indeed, "**[i]t need not be probable** that a criminal prosecution will be brought or that the witness' answer will be introduced in a later prosecution; the witness need only show a realistic possibility that his answer will be used against him." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 266 n.1 (1983) (Marshall, J., concurring) (emphasis added).

The witness need not "establish the precise manner in which he will incriminate himself by responding. This would make the privilege useless. * * * To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Brunswick Corp. v. Doff*, 638 F.2d 108, 110 (9th Cir. 1981) (quoting *Hoffman*, 341 U.S. at 486-87).

Once a court has found that a witness has a genuine concern that his answers may incriminate him, the only way testimony may be compelled is through the government's grant of statutory immunity. *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983) ("Unless the grant of immunity assures a witness that his incriminating testimony will not be used against him in a subsequent criminal prosecution, the witness has not received the certain protection of his Fifth Amendment privilege that he has been forced to exchange. No court has authority to immunize a witness.") As the court held in *Andover Data Services v. Statistical Tabulating Corp.*, 876 F.2d 1080 (2d Cir. 1989):

> Only a grant of statutory immunity can be used to abridge the fundamental fifth amendment rights of the deponent because only its protections are sufficiently co-extensive with the scope of the fifth amendment privilege. * * * As far as we can fathom, at no time has the Supreme Court ever accepted anything less than a duly-authorized grant of statutory use and derivative use immunity as a substitute for the protections of the fifth amendment in cases where potentially incriminating testimony is sought to be compelled from a witness.

*Id.* at 1083.

In light of these authorities, Mr. Duncan's testimony cannot be compelled because he has a genuine concern that his answers may incriminate him, and the Government has not offered to provide him with immunity.

The Government has already indicted seventeen former KPMG employees for tax shelter work. Clements Decl., Exh. I. KPMG has already paid a $456 million fine in what the IRS called "the largest criminal tax case ever filed." Clements Decl., Exh. J (IR-2005-83, Aug. 29, 2005). The SC2 tax transaction specifically involved in this case was highlighted in a Senate investigation as an "elaborate tax avoidance scheme" and "a sham." Clements Decl., Exh. B and C (S. Rep. No.109-54 at 127n.568; S. Hrg. 108-473 at 8). The Government has formally declared SC2 an abusive and prohibited transaction. (*Id.*) In this very case, the Government maintains that SC2 is an illegal and "abusive" tax avoidance structure. *See* Non-Opp. at 3 n.4; Gov't Answer at ¶ 5(c).

As a former KPMG employee who allegedly played a "central role" in what the Government considers yet another component of KPMG's abusive tax shelter scheme (Non-Opp. at 3-4), Mr. Duncan has a credible concern that he may be a potential target of Government scrutiny. Tellingly, the Government has refused to provide any assurance to Mr. Duncan or others similarly situated that they will not be investigated or prosecuted, has not provided any assurance that there is not already an ongoing criminal investigation of these former KPMG employees or SC2,[6] and has

---

[6] In its Non-Opposition, the Government lawyers handling this case suggest that Mr. Duncan and the other former KPMG personnel similarly situated had some obligation to seek out federal prosecutors in New York to inquire about criminal investigations and the like. The Government cites no authority to suggest that these citizens forfeited their Constitutional rights because they chose not to reach out to attorneys who have prosecuted their former fellow employees. Nor have the Government lawyers handling this case (according to their pleadings, both the U.S. Attorney for the Northern District of California and counsel for the Tax Division of the justice Department) provided any explanation for why they did not, or could not, determine whether the Government was investigating, or might be interested in investigating, SC2. Courts have found that the

not chosen to grant any of the former KPMG witnesses with immunity for their testimony. *See* Roman Decl., ¶ 2; Toensing Decl., ¶¶ 4-7. In fact, in the April 13, 2010 letter to plaintiffs' counsel, Government counsel said that he was unaware of the "full scope of the criminal investigation relating to KPMG and its tax shelter products" and avoided stating whether he was aware of an ongoing criminal investigation into SC2. Toensing Decl., Exh. B. The Government's non-response to the direct question from plaintiffs as to whether there is an "actual or potential criminal investigation" into SC2 is all the more concerning in light of the fact that all matters concerning KPMG are still under the control of criminal prosecutors.

Plaintiffs argue in their motion that "any risk of prosecution against the deponents is remote, unlikely and speculative," relying on *McCoy v. Comm'r*, 696 F.2d 1234 (9th Cir. 1983). Pl. Mot. at 7. They offer no factual support for that conclusion, and the case they cite is inapposite. In *McCoy*, a tax protestor couple had petitioned for review of a deficiency assessed by the IRS. *Id.* at 1236. The McCoys were non-lawyers representing themselves. They left the entire Petition For Review form blank save for the words "I object to answering these questions [based] on my constitutional rights as per the first, fourth, fifth and 13th amendments." *Id.* Throughout the proceeding, the McCoys "refused to stipulate to facts or to respond to the Commissioner's interrogatories and requests for production of documents." *Id.* Unlike here, however, the McCoys refused to provide any basis of their fear of prosecution. *Id.* The court upheld the lower court's dismissal of the McCoy's petition for failure to prosecute, finding that "[t]he McCoys flatly refused to justify his [*sic*] fear of criminal prosecution. Their Fifth Amendment claim therefore must be rejected." That is not the situation here, where Mr. Duncan has amply demonstrated in this opposition the basis for his fear of criminal prosecution.

---

Government is to be treated as one entity, like a large corporation. *HAL, Inc. v. United States (In re HAL, Inc.)*, 196 B.R. 159, 165 (B.A.P. 9th Cir. 1996), *aff'd*, 122 F.3d 851, 853 (9th Cir. 1997) ("[A]ll agencies of the United States, except those acting in some distinctive private capacity, are a single governmental unit.") (*quoting Doe v. United States*, 58 F.3d 494, 498 (9th Cir. 1995)).

### C. Plaintiffs' Motion Does Not Establish That the Statute of Limitations Has Run on Possible Criminal Charges.

Plaintiffs make the conclusory assertion that "the statute of limitations has *likely* run on any possible criminal liability that these deponents may face" because the transaction at issue "was entered into more than ten years ago," while the criminal statute of limitations under the Internal Revenue Code is a maximum of six years. Pl. Mot. at 8 (emphasis added). But plaintiffs ignore the fact that for many criminal offenses the date "the transaction was entered" is irrelevant, and plaintiffs do not even address potential conspiracy charges where the statute of limitations can be substantially enlarged by the acts of but a single co-conspirator. None of the cases cited by plaintiffs involved a possible conspiracy charge.

Despite what the plaintiffs may think, Mr. Duncan and others similarly situated cannot be assured that the Government will not contend that the statute of limitations has not run. In the *Stein* case, where other former KPMG employees were criminally prosecuted, the indictment alleged a "scheme to defraud the IRS by devising, marketing and implementing fraudulent tax shelters," which occurred "[d]uring the period from at least in or about 1996 through at least in or about 2005." Clements Decl., Exh. I at ¶ 25. The statute of limitations for tax evasion and for conspiracy to defraud the United States (two of the offenses charged against other KPMG personnel) is six years. *See* Internal Revenue Code § 6531. Therefore, it has already been the Government's stated position that a conspiracy of criminal conduct on tax shelters occurred at KPMG until 2005, which the Government could argue would allow them to charge alleged conspirators in that conduct until at least 2011.[7] Indeed, in Mr. Duncan's deposition the Government asked him about conduct relating to SC2 in 2005.[8]

---

[7] In its Non-Opposition, the Government suggests that Mr. Duncan be asked to address *in camera* why the statute of limitations has not expired. Non-Opp. at 9. Notably absent is any statement by the Government that the statute has, in fact, expired, which would be contrary to the position taken by the Government in the *Stein* case. Second, Mr. Duncan could not be presumed to know what the Government might allege were acts of co-conspirators that have occurred within the last six years.

[8] "Q: Did you play any role in the redemption process of either Santa Clara Valley Housing Group or Award Homes in late 2004 or early 2005?" Fisk Decl., Exh. B at 125-6.

It is important to keep in mind that it is not these plaintiffs' specific transaction or even any acts of Mr. Duncan that the Government might contend are the operative dates for conspiracy charges, which is what the Government has charged against other former KPMG employees who worked on allegedly abusive tax shelters. For conspiracy offenses requiring proof of overt acts – *e.g.*, 18 U.S.C. § 371 (Conspiracy to Defraud the United States), under which other KPMG defendants have been charged, the statute of limitations runs from date of the last overt act in furtherance of the conspiracy. *See Fiswick v. United States*, 329 U.S. 211 (1946); *United States v. Butler*, 792 F.2d 1528 (11th Cir. 1986). Overt acts in furtherance of a conspiracy may occur long after the substantive underlying offense has been completed, thus extending the statute of limitations years past a traditional calculation. *United States v. Thompson*, 518 F.3d 832, 856 (10th Cir. 2008) (finding that a 2002 indictment based on 1992, 1993, 1994, and 1995 tax returns was not barred by a six-year statute because the taxpayer left an ambiguous telephone message with IRS agent in 1997 that a "reasonable jury could have found" was "an overt act in furtherance of the conspiracy"); *See also United States v. Walker*, 653 F.2d 1343, 1346 (9th Cir. 1981) (finding that the division of profits among the conspirators was an overt act sufficient to extend the five-year statute for sending false and collusive bids to the U.S. Forest Service where the false bids were sent seven years before the indictment); *United States v. Mennuti*, 679 F.2d 1032, 1033 (2d Cir. 1982) (finding that the reception of economic benefit from fraudulent mailings was an overt act sufficient to extend the five-year statute for mail fraud where the mailings occurred 63 months before the indictment).

For a RICO conspiracy, which does not require proof of any overt act, the conspiracy may be deemed to continue for statute of limitations purposes until its purpose has been achieved or abandoned. *See United States v. Northern Imp. Co.*, 814 F.2d 540 (8th Cir. 1987); *United States v. Coia*, 719 F.2d 1120 (11th Cir. 1983), cert. denied, 466 U.S. 973 (1984). In a tax evasion case, the statute runs from the date of the last affirmative act of evasion, *e.g.*, making false representations to IRS agents subsequent to the filing of a false return. *United States v. Goodyear*, 649 F.2d 226, 228 (4th Cir. 1981). Indeed, the *Criminal Tax Manual*, which is the handbook for the Justice Department's Tax Division, advises its prosecutors that "[t]he statute of limitations in a conspiracy

begins to run from the date of the last overt act proved. The government is not required to prove, however, that each member of a conspiracy committed an overt act within the statute of limitations." *See* Clements Decl., Exh. K (*Criminal Tax Manual*, § 7.02[4], citations omitted).

While Mr. Duncan does not admit or concede any issue regarding the statute of limitations, he certainly has a credible fear that the Government could render charges based upon conduct occurring within the past six years.

### D. It Is Proper For a Witness to Present His Basis for Assertion of the Fifth Amendment In Opposition to a Motion to Compel.

Without providing any legal support whatsoever, plaintiffs suggest that Mr. Duncan should have provided the basis for his assertion of the Fifth Amendment during his deposition, and that by not doing so, he waived his rights. Pl. Mot. at 7. Mr. Duncan made it abundantly clear in his deposition, in scores of responses to individual questions, that he intended to invoke his rights under the Fifth Amendment. This was sufficient to invoke the privilege. *See Emspak v. United States*, 349 U.S. 190, 194 (1955) ("[N]o ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination. All that is necessary is an objection stated in language that [may be reasonably understood] as an attempt to invoke the privilege."). Whether that invocation is justified is a question for this Court to now decide, based on the information provide in this Opposition. *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) ("It is for the trial judge to determine if silence is justified.").

Contrary to plaintiffs' position, there is no requirement that at the time the Fifth Amendment is invoked in response to a deposition question, the witness then and there provide the questioning party with a full and complete explanation of the bases upon which he has invoked the privilege. Even the case relied upon by plaintiffs, *Baker v. Limber*, recognizes that "**the trial court** must make this determination [whether there is a threat of self-incrimination] from the facts as well as from 'his personal perception of the peculiarities of the case,'" and that an explanation for a witness' refusal to answer questions based on a threat of self-incrimination may be provided in opposition to a motion to compel. *Baker v. Limber*, 547 F.2d 912, 917 (9th Cir. 1981) (emphasis added).

The cases relied upon by plaintiffs do hold that the mere invocation of the Fifth Amendment – standing alone – is in most cases insufficient to shield the witness from a duty to respond to discovery. However, that is not the case here. A credible fear of incrimination has been demonstrated in this Opposition. None of the cases cited by plaintiffs stands for the proposition that if a deponent does not state the reasons for his invocation of the Fifth Amendment at the time he is deposed, he is forever barred from doing so. To the contrary, it is entirely proper to provide the basis for an assertion of privilege in opposition to a motion to compel. In fact, if enough support is provided based on "the facts as well as from his personal perception of the peculiarities of the case," the court can recognize the privilege without further inquiry. *See id.* at 917. Or if the "**court decides** that no threat of self-incrimination is evident, the defendant **then** bears the burden of showing the danger of incrimination." *Id.* (emphasis added, citations omitted.)

In its Non-Opposition, the Government suggests that the Court consider ordering Mr. Duncan to file an affidavit or declaration under seal for the Court's *in camera* inspection. Non-Opp. at 9. However, there is no need for Mr. Duncan to make any further showing because, as demonstrated in this Opposition, there is already more than enough information before the Court to make it clear that the assertion of Fifth Amendment rights was appropriate. Moreover, the Government provides no legal support for the proposition that a witness should be compelled to prepare and swear to such a potentially incriminating document.

### IV.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that plaintiffs' Motion to Compel Testimony should be denied.

Dated: November 19, 2010        KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By: _____/s/_____
STAN G. ROMAN
Attorneys for Third Party
DOUGLAS DUNCAN

14
WITNESS DOUGLAS DUNCAN'S OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY DOUGLAS DUNCAN TO TESTIFY
CASE NO.: 5-08-cv-05097 HRL