STEVEN TOSCHER, State Bar No. 91115
CHARLES P. RETTIG, State Bar No. 97848
AVRAM SALKIN, State Bar No. 30412
EDWARD M. ROBBINS, JR., State Bar No. 82696
SHARYN M. FISK, State Bar No. 199898
Hochman Salkin Rettig Toscher & Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: 310/281-3200
Fax: 310/859-1430
E-Mail: sf@taxlitigator.com

Attorneys for Plaintiffs Santa Clara Valley Housing Group, Inc. and Kristen M. Bowes

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SANTA CLARA VALLEY HOUSING GROUP, INC. and KRISTEN M. BOWES,

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendant.

**CASE NO. 08-cv-05097-LHK**

**PLAINTIFF SANTA CLARA VALLEY HOUSING GROUP, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON SECOND CLASS OF STOCK ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHARYN FISK**

**ORAL ARGUMENT REQUESTED**

**Date: April 21, 2011**
**Time: 1:30 P.M.**
**Place: Courtroom 4, 5th Floor**

NOTICE IS HEREBY GIVEN THAT PLAINTIFF SANTA CLARA VALLEY HOUSING GROUP, INC. ("Santa Clara"), by and through its attorneys, hereby moves this court for an order granting summary judgment pursuant to Fed. R. Civ. P. Rule 56 on the second class of stock issue in its favor and against the Defendant United States of America as more fully set forth in the accompanying Memorandum of Points and Authorities and Declaration of Sharyn Fisk filed concurrently with this motion.

ALSO PLEASE TAKE NOTICE that this matter will come on for hearing before the Honorable Lucy H. Koh, United States District Judge, on Thursday, April 21, 2011 at 1:30 PM in Courtroom 4,

5th Floor, United States Courthouse, 280 S. 1st Street, San Jose, California 95113.

DATED: February 14, 2011

Respectfully submitted,

By: */s/ Sharyn M. Fisk*
SHARYN M. FISK

Hochman, Salkin, Rettig, Toscher & Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212-3414
Telephone: (310) 281-3200
Facsimile: (310) 859-1430
Fisk@taxlitigator.com

*Attorneys for SANTA CLARA VALLEY HOUSING GROUP, INC. and KRISTEN M. BOWES*

307638.1

**TABLE OF CONTENTS**


**Page**

Table of Authorities . . . . . ii

I. INTRODUCTION . . . . . 1

II. STATEMENT OF FACTS . . . . . 2
- A. Santa Clara Valley Housing Group . . . . . 2
- B. Issuance of Warrants . . . . . 3
- C. Donation of Nonvoting Shares . . . . . 3
- D. Redemption of the Nonvoting Shares . . . . . 5
- E. The IRS Examination of Bowes and Santa Clara . . . . . 5

III. ARGUMENT . . . . . 6
- A. Standard for Summary Judgment . . . . . 6
- B. The Warrants Were Not a Second Class of Stock Because They Were Not Substantially Certain To Be Exercised As Exercise Depended on the Occurrence of an Event That Was Not Substantially Certain to Occur and the Warrants Were Never In Fact Exercised . . . . . 6

IV. CONCLUSION . . . . . 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . 6

Bateman v. Comm'r, 40 T.C. 408 (1963) . . . . . . . . . . 6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . 6

Gitlitz v. Comm'r, 531 U.S. 206 (2001) . . . . . . . . . . 2, 4

Helvering v. Southwest Consol. Corp., 315 U.S. 194 (1942) . . . . . . . . . . 6

O.S.C. & Assocs. v. Comm'r, 187 F.3d 1116 (9th Cir. 1999) . . . . . . . . . . 7

## RULES AND REGULATIONS

Treas. Reg. §1.1361-1(l)(1) . . . . . . . . . . 3

Treas. Reg. §1.1361-1(l)(4)(iii)(A) . . . . . . . . . . 2, 7, 8

Treas. Reg. §1.1361-1(l)(4)(iii)(C) . . . . . . . . . . 7, 9

## STATUTORY PROVISIONS

Federal Rules of Civil Procedure § 56(c) . . . . . . . . . . 6

Internal Revenue Code:

§ 401(a) . . . . . . . . . . 3, 4
§ 1361 . . . . . . . . . . 7
§ 1361(b)(1)(D) . . . . . . . . . . 1-3, 5
§1361(c)(4) . . . . . . . . . . 3
§ 1361(c)(6) . . . . . . . . . . 4
§1361(c)(6)(A) . . . . . . . . . . 3
§ 1362 . . . . . . . . . . 2
§1363(c) . . . . . . . . . . 2
§ 1366 . . . . . . . . . . 2
§1366(a) . . . . . . . . . . 4
§ 1366(b) . . . . . . . . . . 4
§ 1377(a) . . . . . . . . . . 4

Internal Revenue Ruling 67-269, 1967-2 CB 298 . . . . . . . . . . 7

Internal Revenue Ruling 95-71, 1995-2 CB 323 . . . . . . . . . . 7

**MISCELLANEOUS**

B. Bittker & J. Eustice, Federal Income Taxation of Corporations & Shareholders ¶12.41[4] . . . 6, 7

Black's Law Dictionary 1428-29 (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STEVEN TOSCHER, State Bar No. 91115
CHARLES P. RETTIG, State Bar No. 97848
AVRAM SALKIN, State Bar No. 30412
EDWARD M. ROBBINS, JR., State Bar No. 82696
SHARYN M. FISK, State Bar No. 199898
Hochman, Salkin, Rettig, Toscher & Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212
Phone: 310/281-3200
Fax: 310/859-1430
E-Mail: sf@taxlitigator.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SANTA CLARA VALLEY HOUSING GROUP, INC. and KRISTEN M. BOWES,

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendant.

**CASE NO. 08-cv-05097-LHK**

**PLAINTIFF SANTA CLARA VALLEY HOUSING GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON SECOND CLASS OF STOCK ISSUE; DECLARATION OF SHARYN FISK**

**ORAL ARGUMENT REQUESTED**

**Date: April 21, 2011**
**Time: 1:30 P.M.**
**Place: Courtroom 4, 5th Floor**

## I. INTRODUCTION

SANTA CLARA VALLEY HOUSING GROUP, INC. ("Santa Clara" or "SCVHG"), by and through its attorneys, respectfully moves for an order granting summary judgment and holding that Santa Clara had only a single class of stock and therefore did not violate Internal Revenue Code[1] Section 1361(b)(1)(D). Wholly inconsistent with its position with respect to Plaintiff Kristen M. Bowes

[1] Unless otherwise stated, all references to "Section", "IRC" or "Code" are to the Internal Revenue Code of 1986 (Title 26, United States Code), as amended in effect during the years at issue.

("Bowes") that Santa Clara was an S corporation, the Government asserts that Santa Clara's status as an S corporation was terminated by the issuance of warrants to purchase nonvoting stock of Santa Clara, alleging that the issuance of the warrants violated the second class of stock prohibition.

This Court should grant summary judgment in favor of Santa Clara on the second class of stock issue because the warrants were not "substantially certain to be exercised." If warrants are not substantially certain to be exercised, they do not constitute a second class of stock for purposes of the Section 1361(b)(1)(D) single class of stock rule. Treas. Reg. §1.1361-1(l)(4)(iii)(A).[2] Because the probability that the warrants would be exercised depended on the occurrence of an event that was not substantially certain to occur—indeed that was not likely to occur—and the warrants were never in fact exercised but cancelled, the warrants as a matter of law were not substantially certain to be exercised.

## II. STATEMENT OF FACTS

### A. Santa Clara Valley Housing Group

Santa Clara is duly qualified as an S corporation pursuant to Section 1362 and, at all times relevant herein, Santa Clara has been an S corporation for federal income tax purposes. [Fisk Decl. Tab A, Ex. 274, Bates pg. 2987-88.] An S corporation is a corporation that has elected to have its income taxed to its shareholders. See IRC §§1363(c), 1366. Compliance is accomplished by the corporation's tax return allocating all items of income and deduction to its shareholders and issuing reports on a Schedule K-1 that reflects each party's pro rata share of the corporate income, *regardless* of whether any of the income is distributed. See IRC §1366; Gitlitz v. Comm'r, 531 U.S. 206, 209 (2001). The shareholders of Santa Clara have no right to require a distribution from the corporation and the corporation has no obligation to make any such distributions to the shareholders. [See Fisk Decl. Tab B, Ex. 274, Bates pg. 3019-20.]

---

[2] In order to be treated as a second class of stock and terminate the S corporation status, taking into account all the facts and circumstances, the warrants must be (a) "substantially certain" to be exercised; *and* (b) have a strike price substantially below the fair market value of the underlying stock on the date that the warrant is issued. Treas. Reg. §1.1361-1(l)(4)(iii)(A). The warrants at issue here were *not* substantially certain to be exercised, and the strike price of the warrants was *not* substantially below the fair market value of the underlying stock on the date the warrant was issued. Because this is a two-prong conjunctive test and it can be determined as a matter of law that the warrants were not substantially certain to be exercised, it is not necessary to resolve in this motion the factual issue of whether the strike price was substantially below the fair market value of the underlying stock on the date the warrant was issued.

To qualify for S status, a corporation must have only one class of stock outstanding. See IRC §1361(b)(1)(D). The one class of stock requirement is not violated when certain shares have voting rights and other shares do not have voting rights. IRC §1361(c)(4). Thus, a valid S corporation is allowed only one class of stock, common stock, but is permitted within such class of common stock to have certain shares with voting rights and other shares without voting rights. See IRC §§1361(b)(1)(D), 1361(c)(4); Treas. Reg. §1.1361-1(l)(1). However, all shares of common stock, voting and nonvoting, must confer identical rights to distribution and liquidation proceeds. See Treas. Reg. §1.1361-1(l)(1). While there are restrictions on who and how many eligible shareholders a valid S corporation may have, a pension plan qualified under Section 401(a) is an eligible shareholder. See IRC §1361(c)(6)(A).

**B. Issuance of Warrants**

Prior to June 30, 2000, Bowes, along with her parents and her two siblings (collectively referred to as the "Voting Shareholders"), were the sole shareholders of Santa Clara through their respective revocable trusts. [Fisk Decl. Tab C, Ex. 274, Bates pg. 2967.] In total, the Voting Shareholders owned 100 shares of voting common stock and 900 shares of nonvoting common stock ("Nonvoting Stock"). [Fisk Decl. Tab C, Ex. 274, Bates pg. 2967.] On June 30, 2000, Santa Clara made a tax-free distribution of warrants (the "Warrants") to the Voting Shareholders to purchase an additional 9000 shares of Nonvoting Stock. [Fisk Decl. Tab D, Ex. 274, Bates pg. 2982-86.] The Warrants were issued with a strike (exercise) price of $165.13, determined by a qualified appraisal conducted by a qualified appraiser to be greater than 90% of the appraised fair market value of a share of the Nonvoting Stock (the underlying stock). [Fisk Decl. Tab E, Ex. 313.] The appraisal was performed by Wendy Sharon, a managing director at the well-regarded appraisal firm Mesirow Financial. [Fisk Decl. Tab E, Ex. 313.] A purpose of the warrants was to protect the Voting Shareholders in case the LA Pension Plan chose to not redeem its shares and remain a shareholder. [Fisk Decl. Tab F, Ikeda Dep. 98:15-20, 100:7-11, 4/08/10.]

**C. Donation of Nonvoting Shares**

On or about July 10, 2000, Bowes donated 144 shares of Nonvoting Stock to the City of Los

Angeles Safety Members Pension Plan ("LA Pension Plan").[3] [Fisk Decl. Tab G, Ex. 18; Fisk Decl. Tab H, Ex. 19.] Collectively, the Voting Shareholders donated 900 shares of Nonvoting Stock to the LA Pension Plan. [Fisk Decl. Tab G, Ex. 18.] The Nonvoting Stock had the same rights to distributions and liquidation proceeds as the Santa Clara voting common stock. [Fisk Decl. Tab I, Ex. 274, Bates pg. 2938-39.] After the donations, the LA Pension Plan owned 90% of the issued and outstanding stock of Santa Clara, with the Voting Shareholders retaining the 100 voting shares, 10% of the issued and outstanding stock. [Fisk Decl. Tab G, Ex. 18.]

In conjunction with the donation of the 900 shares of Nonvoting Stock to the LA Pension Plan, Santa Clara and the LA Pension Plan entered into a Redemption Agreement ("Redemption Agreement") that provided that the LA Pension Plan *in its sole and absolute discretion* had the contractual right or option, *but not the obligation*, to present the Nonvoting Stock to Santa Clara for redemption at the then determined fair market value. [Fisk Decl. Tab J, Ex. 15.] The Redemption Agreement addressed liquidity concerns relating to the Nonvoting Stock, providing the LA Pension Plan with the opportunity to present the Nonvoting Stock to Santa Clara for redemption at any time during a 180 day period beginning on July 15, 2003 (or July 15, 2004, as was extended in this case pursuant to the terms of the Redemption Agreement). [Fisk Decl. Tab J, Ex. 15.]

During tax years 2000 through 2003, Santa Clara allocated its items of income, gain, loss, deduction, and credit to each shareholder in proportion to the number of shares held.[4] [Fisk Decl. Tab K, Ex. 923, Bates pg. 769-788; Ex. 924, Bates pg. 584-618; Ex. 925, Bates pg. 451-474; Ex. 926, Bates pg. 322-366.] The shareholders of Santa Clara, including Bowes, reported their respective shares of the allocated income on their respective income tax returns as required. IRC §1377(a).

///

---

[3] The LA Pension Plan is a qualified plan under Section 401(a) and thus, is an eligible shareholder of an S corporation pursuant to Section 1361(c)(6).

[4] The Code specifically provides that an S corporation's income must be allocated among its shareholders in proportion to the number of shares held. See IRC §§1366(a) & (b), 1377(a). Neither the Code nor the Treasury Regulations provide for any exceptions and under established Supreme Court precedent regarding S corporations, the language of the statute is controlling. See Gitlitz v. Comm'r, 531 U.S. 206, 220 (2001) ("Because the Code's plain text permits the taxpayer to receive these benefits, we need not address this policy concern.").

**D. Redemption of the Nonvoting Shares**

In December 2004, the LA Pension Plan, in its sole and absolute discretion, exercised its right (i.e., option) under the Redemption Agreement and tendered the Nonvoting Stock to Santa Clara for redemption. [Fisk Decl. Tab L, Ex. 35.] Upon receipt of the LA Pension Plan's demand, Santa Clara was required to purchase all of the Nonvoting Stock held by the LA Pension Plan according to the terms and provisions of the Redemption Agreement at the fair market value on the date the LA Pension Plan presented the stock for redemption. [Fisk Decl. Tab J, Ex. 15.] The LA Pension Plan engaged in several months of negotiations with Santa Clara and their advisors, which concluded in an agreement on March 25, 2005 that Santa Clara would purchase the LA Pension Plan's stock for $1,645,002. [Fisk Decl. Tab M, Ex. 40-46; Fisk Decl. Tab N, Ex. 341.] On March 8, 2006, the Warrants were canceled. [Fisk Decl. Tab O, Ex. 342, Bates pg. 93-94.]

**E. The IRS Examination of Bowes and Santa Clara**

On September 1, 2006, the IRS issued a Notice of Deficiency to Bowes, allocating income to her that was previously properly allocated to all shareholders in accordance with each shareholder’s pro rata share, including the LA Pension Plan. [Compl. Ex. C, pg. 12-16.] In reallocating income to Bowes, the Government admitted and relied on Santa Clara’s status as a valid S corporation. [Compl. Ex. C, pg. 12-16.]

At the same time, the IRS also examined Santa Clara and took the inconsistent position that Santa Clara was *not* a valid S corporation. [Compl. Ex. A, pg. 13-18.] In particular, the IRS asserted that Santa Clara’s issuance of warrants allegedly constituted a second class of stock in violation of Section 1361(b)(1)(D), thus terminating Santa Clara’s S-corporation status and making it liable for income tax at the corporate level. [Compl. Ex. A, pg. 13-18.] The IRS’ assertions as to Plaintiffs Bowes and Santa Clara are mutually exclusive contentions. In the inconsistent position asserted against Santa Clara, the IRS claims that Santa Clara’s issuance of warrants should be considered a second class of stock pursuant to Section 1361(b)(1)(D) because the warrants were allegedly (1) substantially certain to be exercised and (2) had a strike price substantially below the fair market value of the underlying stock as of the date the warrants were issued. [Compl. Ex. A, pg. 15.] Because this position presumes that Santa Clara is no longer a valid S corporation, such position is inconsistent with the IRS’

determination against Bowes and its corresponding admission that Santa Clara is a valid S corporation.

## III. ARGUMENT

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact for trial, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3, 323. In determining whether there is a genuine issue of material fact for trial, "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Supreme Court clarified that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250 (internal citations omitted).

Here, it is undisputed that (1) the Warrants were never exercised and (2) the Warrants were not likely to have been exercised unless the LA Pension Plan chose to not redeem its shares. The LA Pension Plan did in fact redeem its shares in December 2004, and the Warrants were canceled in March 2006. Accordingly, the Government's assertion that the warrants were "substantially certain to be exercised" is without foundation.

### B. The Warrants Were Not a Second Class of Stock Because They Were Not Substantially Certain To Be Exercised As Exercise Depended on the Occurrence of an Event That Was Not Substantially Certain to Occur and the Warrants Were Never In Fact Exercised

Warrants confer rights on the holder distinct from stock ownership. See Helvering v. Southwest Consol. Corp., 315 U.S. 194, 200 (1942) ("[T]he warrants which were issued were not 'voting stock.' Whatever rights a warrant holder may have…, he is not a shareholder."); see also Bateman v. Comm'r, 40 T.C. 408, 415 (1963) (holding that "stock purchase warrants did not constitute stock"). Professors Boris Bittker and James Eustice, known as the preeminent authority on corporate taxation, explain that "[i]n effect, warrants and other call-option rights represent merely a future interest in the stock, which,

while a valuable right, is not the same thing as the stock itself." B. Bittker & J. Eustice, Federal Income Taxation of Corporations & Shareholders ¶12.41[4]. Further, in Revenue Ruling 67-269, 1967-2 CB 298, issued prior to the promulgation of Treasury Regulation §1.1361-1(l)(4)(iii), the IRS determined that the mere issuance of warrants does not terminate an S corporation's election because warrants "have none of the attributes of immediate stock ownership, such as the right to vote in the capacity of a stockholder or the right to receive dividends." Rev. Rul. 67-269 (obsoleted by Rev. Rul. 95-71, 1995-2 CB 323).

The Treasury Regulations under Section 1361 have carved out a narrow exception to the general rule that warrants are not stock for the purpose of the single class of stock requirement. Warrants will be considered stock for the purpose of determining whether a corporation meets the single class of stock rule only if they meet a two-prong conjunctive test. Treasury Regulation §1.1361-1(l)(4)(iii)(A) provides, in pertinent part, that a call option, warrant or similar instrument issued by a corporation is treated as a second class of stock of the corporation if, taking into account all of the facts and circumstances, (1) *the warrant is substantially certain to be exercised*; and (2) has a strike price substantially below the fair market value of the underlying stock on the date that the instrument is issued. This regulation, like all Treasury Regulations, is binding upon the Government. O.S.C. & Assocs. v. Comm'r, 187 F.3d 1116, 1125 n.5 (9th Cir. 1999).

The Treasury Regulations also offer taxpayers a "safe harbor," providing that a good faith determination by the corporation that the strike price is at least 90% of the fair market value of the underlying stock on the date the instrument is issued will be respected unless it can be shown that the value was substantially in error and the determination of the value was not performed with reasonable diligence. See Treas. Reg. §1.1361-1(l)(4)(iii)(C). Treasury Regulation §1.1361-1(l)(4)(iii)(C) clarifies, though, that taxpayers need not satisfy the safe harbor. Id. For summary judgment on the second class of stock issue, it is sufficient to determine that the warrants were not substantially certain to be exercised. Treas. Reg. §1.1361(1)(l)(4)(iii)(A).

In this case, the Government asserts that the Warrants were substantially certain to be exercised when, in fact, such Warrants were never exercised. The Government superficially concludes that the Warrants are "substantially certain to be exercised," because the Warrants would be "substantially

certain" to be exercised *if* the LA Pension Plan's stock was not redeemed. This leap is not supported by the plain meaning of Treasury Regulation §1.1361-1(l)(4)(iii)(A). Black's Law Dictionary (6th ed.) defines "substantially" in pertinent part as "without material qualification." Black's Law Dictionary 1428-29 (6th ed. 1990).[5] The Government's assertion that the Warrants were substantially certain to be exercised depends on its material qualification that the Warrants were substantially certain to be exercised *only if* the LA Pension Plan's stock was not redeemed.

The Government's assertion fails to recognize there is the more plausible scenario that the Warrants would not be exercised if the LA Pension Plan's stock is redeemed, which is in fact what actually occurred. If the LA Pension Plan's Nonvoting Stock is redeemed, the warrant holders (i.e., the Voting Shareholders) would own 100% of the outstanding stock of Santa Clara, making it unlikely that they would ever exercise the Warrants, regardless of the strike price. Similar to the rationale behind "poison pills"[6] in the corporate acquisition context, exercising the Warrants would only be considered if the LA Pension Plan chose not to have its shares redeemed. The Government has not offered any factual basis to support that it was substantially certain that the LA Pension Plan would choose not to present its shares for redemption during the redemption period. If anything, there was reason to believe that the LA Pension Plan was likely to redeem its Nonvoting Stock, given the LA Pension Plan's incentive to monetize such shares and its concerns about the shares' liquidity because no ready market existed in which to sell them. The LA Pension Plan did in fact ultimately decide to exercise its right to redeem its stock. Thus, the Government's assertion is not "without material qualification" because it fails to account for the more plausible scenario that the Warrants would not be exercised because the LA Pension Plan's Nonvoting Stock was redeemed.

Further, the Government's assertion incorrectly assumes that the Warrants, which require the payment of a substantial purchase price to acquire the additional shares, will be exercised even if Santa

---

[5] The 6th Edition of Black's Law Dictionary was the edition in effect in 1992 when Treasury Regulation 1.1361-1(l)(4)(iii)(A) was promulgated. T.D. 8419, 57 FR 22649 (May 29, 1992).

[6] A "poison pill" is a business strategy commonly adopted by publicly held companies to protect against a takeover. In this case, the warrants could serve a substantial business purpose of protecting the Voting Shareholders' ownership in Santa Clara and dilute any third party ownership of the Nonvoting Stock if the third party owner turned out to be a rogue, disruptive, or hostile shareholder.

Clara were to suffer substantial losses, face an unexpected decline in value, or encounter unforeseen substantial potential liabilities. For example, Santa Clara may have subsequently been faced with a decline in housing market prices or the tightening of residential financing resulting from the "dot.com" bubble, bad investments or business decisions, or encountered substantial liabilities from construction defects or environmental problems. Regardless of whether Santa Clara redeems the LA Pension Plan's shares, it is unrealistic to assume that the holders of the Warrants would overpay for new shares by exercising the Warrants. If the corporation were to be in a financially challenging position such that it would not be financially prudent for the Warrant holders to invest an additional $1,468,170 in Santa Clara,[7] the Warrants would not be exercised, even if the LA Pension Plan decided not to redeem its shares and were still owners of 90% of the outstanding stock of Santa Clara.

Finally, the Warrants were in fact never exercised, a result that was not only not unexpected, but likely. The Warrants were ultimately cancelled on March 8, 2006. Accordingly, there is no factual basis in the record to support that the Warrants were "substantially certain to be exercised."

Santa Clara also satisfies the safe harbor in Treasury Regulation §1.1361-1(l)(4)(iii)(C) because it relied in good faith on a qualified appraisal by a qualified appraiser that determined that the strike price of the Warrants was greater than 90% of the fair market value of a share of Nonvoting Stock (the underlying stock) on the date the Warrants were issued. The Government disputes the value of the Nonvoting Stock and Santa Clara's ability to rely upon the safe harbor raising a factual question not appropriate for summary judgment. However, it is not necessary for Santa Clara to establish that it meets the safe harbor for the purpose of determining on summary judgment that the Warrants do not constitute a second class of stock because the Warrants were not "substantially certain to be exercised." Thus, the Warrants were not a second class of stock as a matter of law.

///

///

///

///

[7] Exercising the Warrants would require the warrant holders to pay an additional 9000 * $163.13, increasing their investment in Santa Clara.

## IV. CONCLUSION

Based upon the foregoing, Santa Clara's Motion for Summary Judgment regarding the second class of stock issue should be granted.

DATED: February 14, 2011

Respectfully submitted,

By: */s/ Sharyn M. Fisk*
SHARYN M. FISK

Hochman, Salkin, Rettig, Toscher & Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212-3414
Telephone: (310) 281-3200
Facsimile: (310) 859-1430
Fisk@taxlitigator.com

*Attorneys for SANTA CLARA VALLEY HOUSING GROUP, INC. and KRISTEN M. BOWES*

307580.4