STEVEN TOSCHER, State Bar No. 91115
CHARLES P. RETTIG, State Bar No. 97848
AVRAM SALKIN, State Bar No. 30412
EDWARD M. ROBBINS, JR., State Bar No. 82696
SHARYN M. FISK, State Bar No. 199898
Hochman, Salkin, Rettig, Toscher & Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212
Phone: 310/281-3200
Fax: 310/859-1430
E-Mail: sf@taxlitigator.com

Attorneys for Plaintiffs Santa Clara Valley Housing Group, Inc. and Kristen M. Bowes

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SANTA CLARA VALLEY HOUSING GROUP, INC. and KRISTEN M. BOWES, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> Defendant. | **CASE NO. 08-cv-05097-JF** <br><br> **PLAINTIFF SANTA CLARA VALLEY HOUSING GROUP, INC.'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Date:  July 21, 2011 <br> Time:  1:30 p.m. <br> Place:  Courtroom No. 3 |

**SANTA CLARA'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Paragraph (ii) of Treasury Regulation Section 1.1361-1(l)(4) Does Not Apply; If the Warrants Were Not Substantially Certain to be Exercised, the Warrants Do Not Constitute a Second Class of Stock . . . . . . . . . . . . . 3

    B.    The Warrants Were Not Substantially Certain to Be Exercised Because the Possibility of Exercise Was Based Upon Speculative Contingencies, Including Whether the LA Pension Plan Would Redeem Its Shares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    It Was Anticipated that the LA Pension Plan Would Redeem Its Shares, Making Exercise of the Warrants Unnecessary . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    The Voting Shareholders Did Not Act as if the Warrants Were Certain to be Exercised . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    E.    The Warrants Were Not Substantially Certain to Be Exercised by a Potential Transferee Because There Was No Potential Transferee . . . . . . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................. 7

Frank Lyon Co. v. United States, 435 U.S. 561 (1978) .................................................. 7

Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158 (2007) ..................................... 4

Progressive Corp. v. United States, 970 F.2d 188 (6th Cir. 1992) ........................... 5, 6

Spreckels v. Comm'r, 315 U.S. 626 (1942) ................................................................... 4

**RULES & REGULATIONS**

56 Federal Regulation 38391 ......................................................................................... 6

Treasury Regulations:

§ 1.1361-1(l)(4)(iv) ........................................................................................... 4

§ 1.1361-1(l)(4)(v) ............................................................................................ 5

§ 1.1361-1(l)(4)(iii)(A) ..................................................................................... 5

§ 1.1361-1(l)(4)(ii) ........................................................................................ 3, 4

§ 1.1361-1(l)(4)(iii) .................................................................................. 1, 3-5, 7

§ 1.1361-1(l)(4)(iii)(A) ............................................................................... 3, 4, 7

§ 1.1361-1(l)(4)(A) ........................................................................................... 4

**STATUTORY PROVISIONS**

 Internal Revenue Code:

§ 1361(b)(1)(D) ............................................................................................ 1, 3
§ 246(c)(2) ........................................................................................................ 6

**MISCELLANEOUS**

Martin D. Ginsburg & Jack S. Levin, The Subchapter S One-Class-Of-Stock Regulation, 69 Tax Notes 233 (Oct. 9, 1995) ................................................................ 6

Revenue Ruling 80-238 ................................................................................................. 6

T.D. 8419, 1992-2 C.B. 217 .......................................................................................... 4

Plaintiff SANTA CLARA VALLEY HOUSING GROUP ("Santa Clara" or "SCVHG"), by and through its counsel, respectfully submits this Reply to the Government's Opposition ("Opposition") (Doc. #80) to Santa Clara's Motion for Summary Judgment.

## I. INTRODUCTION

As set forth in Santa Clara's Motion for Summary Judgment ("Motion") (Doc. #70), the Warrants issued by Santa Clara did not constitute a second class of stock invalidating Santa Clara's S corporation election. The two-part conjunctive test set forth in Treasury Regulation Section 1.1361-1(l)(4)(iii) conclusively determines that the Warrants in this case did not constitute a second class of stock.[1] Warrants do not violate the single class of stock rule for S corporation eligibility under Internal Revenue Code ("IRC") Section 1361(b)(1)(D) if they are not "substantially certain to be exercised" by the holder or a potential transferee. Treas. Reg. § 1.1361-1(l)(4)(iii). To prevail in its Opposition, the Government has the formidable task of demonstrating that something that did not occur, and was subject to a speculative contingency as to whether it would ever occur, was nonetheless "substantially certain" to occur—the exercise of the Warrants. The Government has not identified any genuine issue of material fact that would justify denying Santa Clara's Motion.[2] Based on the undisputed material facts, a reasonable fact-finder could not conclude that the Warrants were substantially certain to be exercised.

The Government's Opposition contorts the Regulation. First, the Government devotes much of its Opposition to attempting to establish that the Warrants were "deep in the money" because the strike price of the Warrants was less than the fair market value of the underlying stock (as asserted by the Government). The Government misses the point. Whether warrants are issued with a strike price substantially below the fair market value of the underlying stock is but one prong of the two-part conjunctive test. By suggesting that an "in the money" determination means that the Warrants were

---

[1] Because Santa Clara has established that the two-prong test set forth in Treasury Regulation Section 1.1361-1(l)(4)(iii) has not been satisfied, there is no reason for the Court to consider the safe harbor under the Regulation.

[2] The Government has moved for summary adjudication of this issue in its Motion for Summary Adjudication of Issues Against Santa Clara Valley Housing Group, Inc. (Doc. #66 and #67.) For the reasons set forth herein and in Santa Clara's Opposition to the United States' Motion for Summary Adjudication of Issues (Doc. #84), the Government's motion should be denied.

**SANTA CLARA'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1

substantially certain to be exercised, the Government essentially reads out of the Regulation the "substantially certain" language.

Second, the Government attempts to ignore the fact that the LA Pension Plan was anticipated to redeem its shares so as to monetize the gift, removing the possible incentive for the Voting Shareholders to exercise their Warrants, by calling the LA Pension Plan an "accommodation party" to the transaction—an argument that is irrelevant to the determination of whether, taking into account all the facts and circumstances, the Warrants were substantially certain to be exercised. In fact, the Government concedes that if the LA Pension Plan was an "accommodation party"—as the Government argues in its Opposition to Bowes' Motion—the Warrants were *not* substantially certain to be exercised.

The Government's argument that the Warrants should nonetheless be considered substantially certain to be exercised is inconsistent with the actual facts and circumstances in this case and relies on a speculative contingency—*if* the LA Pension Plan had instead refused to sell its donated shares to Santa Clara (asserted by the Government's expert to be the LA Pension Plan's "optimal strategy"), the Warrants would have been substantially certain to be exercised. [Gov. Opp. at 6:5-7, 15:13-14.] But that is a big *if*. The plain language of the Regulation does not permit or suggest that a speculative contingency—which never occurred—should be assumed to have occurred in determining whether the Warrants were substantially certain to be exercised.

Third, in asserting that the Voting Shareholders treated the Warrants as certain to be exercised by disclosing their *existence* to the LA Pension Plan and appraisers, the Government confuses the difference between acknowledging the *existence* of the Warrants (which impacts the value of the Nonvoting Stock) and actually expecting the Warrants to be exercised. The undisputed facts reflect that none of the Voting Shareholders ever expected to exercise their Warrants, but the Warrants' presence was a factor that was disclosed to the LA Pension Plan and any appraiser of its shares because of the Warrants' impact on the value of the shares.

Finally, the Government argues that a "putative transferee" would have exercised the Warrants, mischaracterizing the Regulation that requires a determination of whether a "potential transferee" would be substantially certain to exercise the Warrants. As the Government has acknowledged in other

---

**SANTA CLARA'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
2

pleadings in this case,[3] there was no potential transferee to consider.

The Court should reject the Government's contorted construction of the Regulation that has allowed the Government to assess twice as much tax due as is actually in dispute. The taxes assessed by the Government against Santa Clara and Bowes are based on mutually inconsistent legal and factual theories—that Santa Clara is an S Corporation (in defending Bowes' complaint for refund) and that Santa Clara is C Corporation (in defending Santa Clara's complaint for refund)—inequitably taxing the same income twice. This is not a situation where the government is being "whipsawed" as a result of taxpayers taking inconsistent positions—it is the Government here asserting inconsistent positions. The Government acknowledges this,[4] but continues to maintain these inconsistent positions through this late stage in the litigation.

Because the undisputed facts demonstrate that the Warrants were not substantially certain to be exercised, the issuance of the Warrants did not terminate Santa Clara's S corporation election. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Santa Clara's Motion for Summary Judgment should be granted and Santa Clara should be awarded the refund sought in the Complaint.

## II.  ARGUMENT

**A.  Paragraph (ii) of Treasury Regulation Section 1.1361-1(l)(4) Does Not Apply; If the Warrants Were Not Substantially Certain to be Exercised, the Warrants Do Not Constitute a Second Class of Stock**

The test for whether warrants constitute a second class of stock in violation of Section 1361(b)(1)(D) is set forth in Treasury Regulation Section 1.1361-1(l)(4)(iii) titled "Certain call options, warrants or similar instruments." As set forth in Part III.F (pages 27-28) of Santa Clara's Opposition to the Government's Motion for Summary Adjudication of Issues (Doc. #84) and incorporated by reference herein, the test set forth in Treasury Regulation Section 1.1361-1(l)(4)(ii) does not apply to warrants. Treas. Reg. § 1.1361-1(l)(4)(iii)(A). Under the Supreme Court rule of regulatory interpretation instructing that the specific controls the general, Paragraph (l)(4)(iii) conclusively

---

[3] See Doc. #67, Gov. Mem. P. & A. at 30 n.19; Doc. #79, Gov. Opp. to Bowes' Mot. at 33:11-13.

[4] See Fisk Decl. Tab A, Gov.'s Resp. to SCVHG's Req. for Admis. No. 21.

**SANTA CLARA'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
3

determines whether a warrant is a second class of stock. See Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 170 (2007); Spreckels v. Comm'r, 315 U.S. 626, 628 (1942).

This conclusion is confirmed in the Preamble to the final regulations, as well as in the final regulations themselves. Under the heading "Call Options," the Preamble states: "The proposed regulations provide that a call option (or similar instrument) is *not* treated as a second class of stock *unless*, taking into account all the facts and circumstances, the call option is substantially certain to be exercised and has a strike price substantially below the fair market value of the underlying stock...." T.D. 8419, 1992-2 C.B. 217 (emphasis added). This rule is set forth in Section 1.1361-1(l)(4)(iii) of the final regulations. Treas. Reg. § 1.1361-1(l)(4)(iii)(A). Paragraph (ii) of Section 1.1361-1(l)(4) applies instead only to debt and debt-like instruments that are considered equity under general principles of tax law; it does not cover warrants. See T.D. 8419, 1992-2 C.B. 217 (describing the rule set forth in Paragraph (ii) of Treasury Regulation Section 1.1361-1(l)(4) under the heading "Obligations Designated as Debt").

This is further confirmed in the provision in the final regulations with respect to convertible debt, which is an instrument that resembles both debt and options. The final regulations provide that convertible debt will constitute a second class of stock if it satisfies the tests under either Paragraph (ii) or Paragraph (iii) of Treasury Regulation Section 1.1361-1(l)(4). If the Treasury intended two sets of rules to apply to warrants, it would have done so as it did with convertible debt. Treas. Reg. § 1.1361-1(l)(4)(iv).

Accordingly, because the Warrants were not substantially certain to be exercised and cannot satisfy the two-prong test set forth in Paragraph (iii) of Treasury Regulation Section 1.1361-1(l)(4), Santa Clara is entitled to summary judgment that the Warrants do not constitute a second class of stock.

**B.     The Warrants Were Not Substantially Certain to Be Exercised Because the Possibility of Exercise Was Based Upon Speculative Contingencies, Including Whether the LA Pension Plan Would Redeem Its Shares**

The Government's Opposition obliterates the two-prong test required by Treasury Regulation Section 1.1361-1(l)(4)(A), asserting that the "warrants were substantially certain to be exercised as long as they were substantially certain to be in the money." [Gov. Opp. at 9:4-6.] For a warrant to constitute

a second class of stock, it must be *both* (1) substantially certain to be exercised taking into account all the facts and circumstances, and (2) be issued with a strike price substantially below the fair market value of the underlying stock. Treas. Reg. § 1.1361-1(l)(4)(iii)(A). The Government's argument flies in the face of the plain meaning of the regulation and ignores the material undisputed facts that make the Warrants not substantially certain to be exercised, regardless of the fair market value of the underlying stock.[5]

Treasury Regulation Section 1.1361-1(l)(4)(iii) provides, in pertinent part, that a warrant is treated as a second class of stock if:

> taking into account all the facts and circumstances, the call option is substantially certain to be exercised (by the holder or a potential transferee) **and** has a strike price substantially below the fair market value of the underlying stock on the date that the call option is issued, transferred by a person who is an eligible shareholder under paragraph (b)(1) of this section to a person who is not an eligible shareholder under paragraph (b)(1) of this section, or materially modified.

Treas. Reg. § 1.1361-1(l)(4)(iii)(A) (emphasis added). An example provided in the Regulation demonstrates that even if a warrant is issued with a strike price substantially below the fair market value of the underlying stock, that is not sufficient to constitute a second class of stock because it would satisfy only one part of the two-part conjunctive test. Treas. Reg. § 1.1361-1(l)(4)(v), Ex. (1)(iii). Example (1)(iii) under the Regulation establishes that a warrant issued with a strike price substantially below the fair market value of the underlying stock (50% of the value in the example) will not constitute a second class of stock unless it is *also* determined that the warrant was "substantially certain to be exercised" taking into account "all the facts and circumstances."[6] Id.

Neither Progressive Corp. v. United States, 970 F.2d 188 (6th Cir. 1992), nor Revenue Ruling 80-238, cited by the Government, support the Government's attempt to collapse the two-part conjunctive

---

[5] Santa Clara disputes the Government's assertions as to the appraisal performed by Mesirow Financial and the fair market value of the Nonvoting Stock. For purposes of Santa Clara's Motion for Summary Judgment, it is unnecessary to resolve the factual dispute as to the fair market value of the underlying stock. As set forth in Santa Clara's Opposition to the United States' Motion for Summary Judgment (Doc. #84), whether the second prong of the two-part conjunctive test is met is not appropriate for summary adjudication.

[6] Example (1)(iii) of Treasury Regulation Section 1.1361-1(l)(4)(v) is set forth and discussed further in Santa Clara's Opposition to the Government's Motion for Summary Adjudication of Issues (Doc. #84), page 17.

**SANTA CLARA'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
5

test into a single test.  Progressive and Revenue Ruling 80-238 address whether a call option that is deep in the money can constitute a "contractual obligation to sell" within the meaning of IRC Section 246(c)(2) for the purpose of determining whether a corporation satisfies the holding period requirement for qualifying for a dividend received deduction.  The Government argues that Progressive is persuasive authority for interpreting the "substantially certain to be exercised" prong of the two-part test because the Notice of Proposed Rulemaking issued on October 5, 1990 references Revenue Ruling 80-238.  However, the October 5, 1990 proposed regulations were met with heavy criticism and were subsequently withdrawn.  Martin D. Ginsburg & Jack S. Levin, The Subchapter S One-Class-Of-Stock Regulation, 69 Tax Notes 233, 234 (Oct. 9, 1995).  New proposed regulations were issued on August 13, 1991, with no reference to Revenue Ruling 80-238.  56 Fed. Reg. 38391.  These new proposed regulations set forth for the first time the two-part conjunctive test that was adopted in the final regulations, requiring a separate inquiry into whether, based on all the facts and circumstances, the Warrants were substantially certain to be exercised.  Id.

Taking into account the undisputed material facts here, a reasonable fact-finder could not conclude that the Warrants were substantially certain to be exercised, even if the strike price of the Warrants was substantially below the fair market value of the underlying stock.  Progressive contemplates a possible situation where a call option could be issued with sufficiently high built-in profit that it is similar to entering into a contract to sell the underlying stock.  That is not the situation here. If the LA Pension Plan exercised its rights under the Redemption Agreement, the Voting Shareholders would have had no reason to exercise the Warrants.

Unlike in Progressive, the Warrants would not have been profitable if they were exercised on the date they were issued, because they were issued pro rata to the Voting Shareholders who already owned 100% of the equity of Santa Clara.[7]  Under a test that requires "all the facts and circumstances" be considered, this must be taken into account.  The Warrants were issued in contemplation of a donation by the Voting Shareholders of their Nonvoting Stock to the LA Pension Plan.  The Voting

---

[7] See pages 18:9-19:1 and 24:7-17 of Santa Clara's Opposition to the United States' Motion for Summary Adjudication of Issues (Doc. #84) for an analysis demonstrating that exercise of the Warrants would not have been profitable on the date the Warrants were issued.

Shareholders did not anticipate that the LA Pension Plan would want to remain a shareholder of Santa Clara indefinitely, but because the Nonvoting Stock gave the LA Pension Plan that right, the Warrants were issued to serve in effect as a poison pill to protect the Voting Shareholders in case the LA Pension Plan chose to remain a shareholder indefinitely. The Voting Shareholders would not have exercised the Warrants if the LA Pension Plan presented its shares for redemption during the term provided in the Redemption Agreement. The possible exercise of the Warrants was thus subject to a speculative contingency, which might or might not have happened in the future, and which in fact did not happen. For purposes of Santa Clara's Motion, it is unnecessary to determine the fair market value of the underlying stock, making the Government's assertions regarding the Warrants being "in the money" irrelevant.[8]

### C. It Was Anticipated that the LA Pension Plan Would Redeem Its Shares, Making Exercise of the Warrants Unnecessary

Treasury Regulation 1.1361-1(l)(4)(iii) requires "all the facts and circumstances" be taken into account in determining whether the Warrants were substantially certain to be exercised. The Government concedes that if the LA Pension Plan was an "accommodation party"—as the Government argues in its Opposition to the Bowes Motion for Summary Judgment (Doc. #79)—the Warrants were not substantially certain to be exercised. [Gov. Opp. at 7-8, 14-15.] The Government cites the substance over form doctrine set forth in Frank Lyon Co. v. United States, 435 U.S. 561, 572-73 (1978), in an attempt to support ignoring the material undisputed facts that make the Warrants not substantially certain to be exercised. [Gov. Opp. at 11.] However, the substance over form doctrine does not allow the Government to ignore real facts that have real economic consequences to the parties and does not apply to a determination of whether a corporation is an eligible small business corporation under the statutory test defined in Subchapter S of the IRC. The Subchapter S Regulations require "all facts and circumstances" to be taken into account in determining whether warrants issued by a corporation are substantially certain to be exercised. Treas. Reg. § 1.1361-1(l)(4)(iii)(A).

---

[8] In determining whether there is a genuine issue of material fact for trial, "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**SANTA CLARA'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
7

The LA Pension Plan's decision to present its shares for redemption pursuant to the Redemption Agreement is a reflection of economic considerations, future uncertainties, and the rights and obligations of the parties involved. It does not call into question the substance of the transaction nor make the LA Pension Plan an "accommodation party." The LA Pension Plan's decision to present its shares for redemption was a decision made by the LA Pension Plan's Chief Investment Officer Tom Lopez. The Government has not and cannot point to any facts that Mr. Lopez was acting as anything other than an independent third party looking out for the interest of the LA Pension Plan. Although the Government argues that its expert Dr. Thomas Lys would have advised the LA Pension Plan to take a different negotiating strategy, that is not what happened. While a different strategy for the LA Pension Plan might have produced a higher price paid by Santa Clara to redeem the shares, that conjecture bears no relevance to whether the Warrants were substantially certain to be exercised.

An analysis of the economic considerations at play shows that at best, there was significant uncertainty as to what the LA Pension Plan would or should do with its Nonvoting Stock. The LA Pension Plan had the following options: (1) exercise its rights under the Redemption Agreement within the time frame specified; (2) separately negotiate with Santa Clara or the Voting Shareholders to sell its Nonvoting Stock; (3) sell its Nonvoting Stock to a third party subject to the right of first refusal held by Santa Clara; or (4) hold on to its Nonvoting Stock indefinitely. Presenting its Nonvoting Stock to Santa Clara for redemption pursuant to the Redemption Agreement was an objectively reasonable and prudent decision by Mr. Lopez. The Redemption Agreement was the most expedient way for the LA Pension Plan to monetize the donated shares. With Santa Clara being a closely held corporation, the Nonvoting Stock was illiquid. Because shareholders have no right to demand distributions from Santa Clara, the LA Pension Plan's Nonvoting Stock would have been especially difficult to monetize absent the Redemption Agreement. The Redemption Agreement gave the LA Pension Plan the right to receive the current fair market value of the shares as determined by an appraisal. Mr. Lopez negotiated this price with Santa Clara, to ensure that the LA Pension Plan received fair market value for its Nonvoting Stock. The price Mr. Lopez negotiated was more than ten (10) times the appraised value of the shares upon donation. [Doc. #70 Fisk Decl. Tab E, Ex. 313; Doc. #70 Fisk Decl. Tab N, Ex. 341.]

///

D. **The Voting Shareholders Did Not Act as if the Warrants Were Certain to be Exercised**

The Government argues without factual support that the parties acted as if the Warrants were certain to be exercised, basing its argument on the fact that the Voting Shareholders disclosed the existence of the Warrants to both the LA Pension Plan upon donation and to Mesirow Financial, the qualified appraiser valuing the shares donated to the LA Pension Plan. The Government's argument confuses the difference between the existence of the Warrants (and the Warrants' impact on the value of the Nonvoting Stock) and the probability the Warrants would actually be exercised. This disclosure does not indicate that the Voting Shareholders intended to exercise the Warrants, only that the Voting Shareholders had the right to exercise the Warrants. Because the Warrants impacted the value of the Nonvoting Stock donated to the LA Pension Plan by potentially diluting the stock, disclosure was proper to accurately describe the property being donated to the LA Pension Plan. It is irrelevant to a determination of whether the Warrants were substantially certain to be exercised.

E. **The Warrants Were Not Substantially Certain to Be Exercised by a Potential Transferee Because There Was No Potential Transferee**

The Government acknowledged in its Motion for Summary Adjudication of Issues and in its Opposition to the Bowes' Motion for Summary Judgment that the Warrants had no value for a potential third-party transferee and accordingly could not be transferred to a third party. [Doc. #67, Gov. Mem. P. & A. at 30 n.19 ("It is less clear that someone would be willing to buy the warrant…."); Doc. #79, Gov. Opp. to Bowes' Mot. at 33:11-13 ("In fact, the lack of any dilution protection feature in the warrants made them absolutely worthless to any holder other than someone who also held voting shares.").] The Government's expert Dr. Thomas Lys explained that there would be no willing buyers for the Warrants because the Warrants were not issued with anti-dilution protection features. [Fisk Decl. Tab B, Ex. 819 at 4 n.2.] In his Expert Rebuttal Report, Dr. Lys states:

> I saw no provisions in the warrant documents that provided anti-dilution protection or specified the procedure under which the warrants could be cancelled. The absence of such clauses made it *virtually certain that no rational third-party would be willing to buy the Santa Clara warrants*. This is consistent with an effectively zero stand-alone value for the Santa Clara warrants.

[Fisk Decl. Tab B, Ex. 819 at 4 n.2 (emphasis added).]

///

The lack of anti-dilution features demonstrates the other reason there is no potential transferee to consider: the Warrants were issued for a specific purpose and would not have been sold, regardless of whether there was a willing buyer. Anti-dilution features were not needed because the Warrants were issued to the Voting Shareholders in order to protect their ownership and control of Santa Clara, a family-run corporation. Selling the Warrants to a third party giving a third party the right to purchase 9000 shares of Santa Clara would defeat the purpose of the Warrants. With no willing buyer and no willing seller, the Warrants were not substantially certain to be exercised by a potential transferee because there was no potential transferee for these Warrants.

### III.  CONCLUSION

For the foregoing reasons, in addition to those set forth in Santa Clara's Memorandum of Points and Authorities in support of its Motion and its Opposition to the Government's Motion for Summary Adjudication of Issues, Santa Clara's Motion for Summary Judgment on the second class of stock issue should be granted.

DATED: May 13, 2011

Respectfully submitted,

By: /s/ Sharyn M. Fisk
SHARYN M. FISK

Hochman, Salkin, Rettig, Toscher & Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212-3414
Telephone: (310) 281-3200
Facsimile: (310) 859-1430
Fisk@taxlitigator.com

*Attorney for SANTA CLARA VALLEY HOUSING GROUP, INC. and KRISTEN M. BOWES*

# PROOF OF SERVICE

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 9150 Wilshire Boulevard, Suite 300, Beverly Hills, California 90212.

On May 13, 2011, I served the foregoing document described as **PLAINTIFF SANTA CLARA VALLEY HOUSING GROUP, INC.'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** in the manner indicated below, on the following interested parties in this action:

> Henry C. Darmstadter, Esq.
> James E. Weaver, Esq.
> Adam D. Strait, Esq.
> Trial Attorneys, Tax Division
> U.S. Department of Justice
> 555 Fourth St., N.W., Room 7235
> Washington, D.C. 20001-2733

___ **(BY ELECTRONIC MAIL)** I caused such document(s) to be delivered by email to the email address(es) of the interested parties indicated above.

_X_ **(BY U.S. MAIL)** I caused such envelope(s) to be addressed as indicated above and deposited in the United States mail at Beverly Hills, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

___ **(VIA OVERNIGHT COURIER)** I caused such document(s) to be delivered to the interested parties indicated above via overnight courier. The fees for delivery were prepaid.

___ **(BY PERSONAL SERVICE)** I caused to be delivered such envelope(s) by hand to the addresses of the interested parties indicated above.

___ **(VIA FACSIMILE)** I caused to be delivered such document(s) to the interested parties indicated above via facsimile transmission to the fax numbers indicated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 13, 2011, at Beverly Hills, California.

        /s/ Jessica Crenshaw
        Jessica Crenshaw

---

**SANTA CLARA'S REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**