1

2                IN THE UNITED STATES DISTRICT COURT

3           FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

   SANTA CLARA VALLEY          )  CV-08-5097-JF
6  HOUSING GROUP, INC., ET     )
   AL,                         )  SAN JOSE, CALIFORNIA
7                              )
              PLAINTIFF,       )
8                              )  JULY 19, 2011
         VS.                   )
9                              )
   UNITED STATES,              )  PAGES 1-35
10                             )
              DEFENDANT.
11  _____

12              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMY FOGEL
13            UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16

17  FOR THE PLAINTIFF:  HOCHMAN SALKIN
                        BY:  STEVEN TOSCHER
18                           LACEY STRACHAN
                             SHARYN FISK
19                      9150 WILSHIRE BLVD, STE 300
                        BEVERLY HILLS, CA 90212
20

21  FOR THE DEFENDANT:  U.S. DEPARTMENT OF JUSTICE
                        TAX DIVISION
22                      BY:  HENRY C. DARMSTADTER, III
                             JAMES WEAVER
23                      PO BOX 683
                        WASHINGTON, DC 20044
24

25  OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                             CERTIFICATE NUMBER 13185

1

```
 1    SAN JOSE, CALIFORNIA          JULY 19, 2011

 2                    P R O C E E D I N G S

 3                  (WHEREUPON, COURT CONVENED AND THE

 4    FOLLOWING PROCEEDINGS WERE HELD:)

 5                  THE COURT:  SANTA CLARA VALLEY HOUSING,

 6    GROUP.

 7                  THE COURT:  GOOD AFTERNOON.  PLEASE BE

 8    SEATED AND COME TO ORDER.

 9                  THIS IS THE MATTER OF SANTA CLARA VALLEY

10    HOUSING VERSUS THE UNITED STATES.

11                  MAY I HAVE COUNSEL'S APPEARANCES, PLEASE.

12                  MR. DARMSTADTER, III:  HENRY DARMSTADTER

13    AND JAMES WEAVER ON BEHALF OF THE GOVERNMENT,

14    YOUR HONOR.

15                  MR. TOSCHER:  GOOD AFTERNOON, YOUR HONOR.

16                  STEVEN TOSCHER, SHARYN FISK AND LACEY

17    STRACHAN FOR PLAINTIFFS KRISTEN BOWES AND SANTA

18    CLARA VALLEY HOUSING GROUP.

19                  THE COURT:  THANK YOU.

20                  WELL, THANK YOU FOR YOUR BRIEFS.  THEY

21    WERE VERY, VERY HELPFUL.

22                  I HAVE A QUESTION I WOULD LIKE TO START

23    WITH JUST TO FOCUS THINGS A LITTLE BIT.

24                  THE GOVERNMENT IS SEEKING AN ADJUDICATION

25    THAT THE S CORPORATION WAS NEVER PROPERLY
```

1  CONSTITUTED.  SO IF THAT WERE THE CASE THEN THE

2  CORPORATION SHOULD HAVE BEEN TAXED AS A C

3  CORPORATION.

4          I'M TRYING TO GET A SENSE OF THE BIG

5  PICTURE.  MS. BOWES'S MOTION, WHICH IS FOR REFUND,

6  HER PIECE OF THE REFUND, RATHER HER LIABILITY, IS A

7  PIECE OF THE LIABILITY OF THE C CORPORATION IS

8  FAIRLY MINIMAL.

9          SO I JUST WANT TO GET A SENSE OF HOW THIS

10  PLAYS OUT.  IF THE GOVERNMENT IS SUCCESSFUL ON ITS

11  MOTION, WHAT'S LEFT TO DO IN THE CASE AS A WHOLE?

12          MR. DARMSTADTER, III:  YOUR HONOR, IF --

13  BEFORE THE COURT IS ALTERNATIVE REMEDIES.  IF THE

14  COURT DETERMINES THAT SANTA CLARA WAS A C

15  CORPORATION THEN IT WOULD BE TAXED AS A C

16  CORPORATION AND THERE WOULDN'T BE A NEED IT

17  REALLOCATE THE INCOME FROM THE PENSION PLAN TO THE

18  OTHER SHAREHOLDERS.

19          THERE WAS SIMPLY THE PENALTY ASPECT OF

20  THE CASE, BUT THAT WOULD BE SUFFICIENT AS IT

21  PERTAINS TO TAXING THE INCOME.

22          IN OTHER WORDS, IT WOULD BE INSTEAD OF S

23  CORPORATION TAXATION WHICH PASSES THROUGH TO THE

24  INDIVIDUAL SHAREHOLDERS, IT WOULD BE A C

25  CORPORATION WHERE IT'S TAXED FIRST AT THE ENTITY

```
1    LEVEL THEN POTENTIALLY A SECOND TIME WHEN IT'S --

2              THE COURT:  RIGHT.  NO, I UNDERSTAND.

3              BUT I'M JUST TRYING TO UNDERSTAND HOW THE

4    ACCOUNTING PLAYS OUT.

5              THE TAXPAYERS IN THIS INSTANCE PAID WHAT

6    THEY WERE REQUIRED TO PAY AND NOW THEY ARE ASKING

7    FOR THAT MONEY BACK.

8              SO IF YOU ARE SUCCESSFUL IN CONVINCING ME

9    THAT THIS WAS NEVER AN S CORPORATION, JUST EXPLAIN

10   TO ME HOW THE DOLLARS FLOW AND WHAT REMAINS FOR THE

11   COURT.

12             MR. DARMSTADTER, III:  CERTAINLY,

13   YOUR HONOR.

14             IN THAT CASE, IN ALL LIKELIHOOD MS. BOWES

15   WOULD BE ENTITLED TO A REFUND.

16             THE COURT:  OF ABOUT $8,000 OR SOMETHING?

17             MR. DARMSTADTER, III:  I BELIEVE IT'S

18   MORE THAN THAT.

19             THE COURT:  MORE THAN THAT, OKAY.

20             MR. DARMSTADTER, III:  BUT THAT'S

21   CORRECT, YOUR HONOR.

22             WE WOULD TAX IT AS A C CORPORATION AND IT

23   WOULDN'T PASS THROUGH TO MS. BOWES AS AN S

24   CORPORATION TAX, SO SHE WOULD BE ENTITLED TO A

25   REFUND IN A CERTAIN AMOUNT THAT I BELIEVE
```

```
 1    MR. TOSCHER AND I COULD AGREE TO THAT FIGURE.

 2            THE COURT:  BUT THEN WHAT HAPPENS TO THE

 3    TAX LIABILITY?  DO YOU COLLECT MONEY FROM THE --

 4    AGAIN, I'M JUST TRYING TO UNDERSTAND WHAT THE FIGHT

 5    IS ULTIMATELY ABOUT.

 6            SO HOW DOES THE GOVERNMENT GET MADE

 7    WHOLE?  HOW DOES MS. BOWES GET MADE WHOLE?  WHERE

 8    DOES THAT LEAVE US IF THERE WAS NEVER AN S

 9    CORPORATION?

10            MR. DARMSTADTER, III:  IF THERE WAS NEVER

11    AN S CORPORATION, YOUR HONOR, WE WOULD TAX SANTA

12    CLARA AS A C CORPORATION.  AND THAT WOULD BE,

13    BECAUSE PRESUMABLY I BELIEVE THEY FILED CLAIMS FOR

14    REFUND, THAT ALL OF THE INDIVIDUAL SHAREHOLDERS,

15    MEMBERS OF THE FAMILY, WOULD BE ENTITLED TO A

16    PARTIAL REFUND.

17            THE COURT:  OKAY.  BUT THEN HOW DOES

18    LIABILITY OF THE CORPORATION GET PAID?

19            MR. DARMSTADTER, III:  THE LIABILITY OF

20    THE CORPORATION WOULD BE PAID THROUGH THE ASSETS OF

21    SANTA CLARA.

22            THE COURT:  ALL RIGHT.  SO.

23            I'M ASKING -- I THINK ULTIMATELY IT'S A

24    PRETTY SIMPLE QUESTION BUT I JUST NEED TO

25    UNDERSTAND IT BECAUSE I WANT TO UNDERSTAND THE BIG
```

1  PICTURE AS BETWEEN THE PARTIES.

2         SO AT THAT POINT SANTA CLARA WOULD OWE

3  MONEY TO THE GOVERNMENT THAT'S NOT YET PAID?

4         MR. DARMSTADTER, III:  TO THE EXTENT THEY

5  MAY HAVE BEEN PAID, A GOOD PORTION OF THE MONEY IN

6  ORDER TO FILE THEIR REFUNDS.

7         APPARENTLY THERE ARE OTHER YEARS FOR

8  WHICH THEY HAVE NOT PAID AND THEY WOULD OWE THAT

9  MONEY.

10         THE COURT:  ALL RIGHT.

11         SO THERE WOULD STILL BE AN OUTSTANDING

12  COLLECTION THAT THE GOVERNMENT WOULD SEEK AGAINST

13  SANTA CLARA BUT THE INDIVIDUAL SHAREHOLDERS, THE

14  FAMILY MEMBERS, WOULD ALL BE ENTITLED TO SOME SUM

15  OF MONEY BACK.

16         MR. DARMSTADTER, III:  THAT'S CORRECT,

17  YOUR HONOR.

18         WE WOULD TAX ALL OF THE YEARS FOR THIS

19  STRATEGY AS A C CORPORATION.

20         AND TO THE EXTENT THAT THE INDIVIDUAL

21  SHAREHOLDERS PAY TAX ON THAT MONEY, THEN THEY WOULD

22  BE ENTITLED TO A REFUND.

23         THE COURT:  OKAY.

24         SO THERE WOULD BE SOME RE ACCOUNTING THAT

25  WOULD HAVE TO BE DONE.

1          MR. DARMSTADTER, III:  AND YOUR HONOR,
2    SORRY TO INTERRUPT, BUT PLEASE DON'T FEEL THAT THE
3    COURT NEEDS TO CALCULATE THAT AMOUNT.  WE WOULD --
4          THE COURT:  I DON'T.
5          I JUST WANT TO UNDERSTAND WHAT THE FIGHT
6    IS ABOUT BECAUSE THE GOVERNMENT, IF I'M
7    UNDERSTANDING THE PAPERS CORRECTLY, IS NOT SEEKING
8    SUMMARY JUDGEMENT AS TO WHETHER THIS WAS AN ABUSE
9    OF TAX SHELTER.  THAT'S AN ISSUE THAT MS. BOWES HAS
10   RAISED BUT IT'S NOT AN ISSUE THE GOVERNMENT HAS
11   RAISED.
12         MR. DARMSTADTER, III:  WE HAVE MOVED FOR
13   SUMMARY JUDGEMENT ON THE KIND OF TECHNICAL TAX
14   ISSUE WHICH IS THIS SECOND CLASS OF STOCK --
15         THE COURT:  RIGHT.
16         MR. DARMSTADTER, III:  -- ISSUE, BY
17   REASON OF THE WARRANTS.
18         THE COURT:  OKAY.  I WILL COME BACK TO
19   THAT.  I JUST WANT TO MAKE SURE NOW THAT SANTA
20   CLARA DOESN'T HAVE ANYTHING TO ADD OR SUBTRACT OF
21   WHAT I JUST SAID ABOUT WHAT THE FIGHT IS ABOUT.
22         MR. TOSCHER:  I THINK THAT'S CORRECT,
23   YOUR HONOR.
24         IF IT WAS A C CORPORATION MS. BOWES WOULD
25   BE ENTITLED TO ALL THE AMOUNTS SHE SOUGHT IN THE

1    COMPLAINT.

2              THE GOVERNMENT'S POSITIONS ARE MUTUALLY
3    EXCLUSIVE.

4              THE COURT:  OKAY.  ALL RIGHT.

5              SO LET'S TALK ABOUT THE, WHAT KIND OF
6    CORPORATION THIS WAS.  AND THERE'S TWO PRONGS TO
7    THE ARGUMENT.

8              ONE IS THAT THERE WERE TWO CLASSES OF
9    STOCK.  AND THE OTHER IS SO THAT THERE COULDN'T
10   HAVE BEEN AN S CORPORATION.

11             AND SECONDLY, THAT THE WARRANTS
12   NECESSARILY WERE GOING TO BE EXERCISED, WHICH IS
13   ANOTHER EXCEPTION AND A NARROWER ONE.

14             AND AS I UNDERSTAND SANTA CLARA'S
15   POSITION, YOU'RE ESSENTIALLY ARGUING THAT -- THAT
16   BOTH OF THOSE REQUIREMENTS HAVE TO BE MET.  THERE
17   HAVE TO BE TWO CLASSES OF STOCK AND THAT THE
18   WARRANTS HAVE TO BE NECESSARILY EXERCISED, CORRECT?
19   THAT'S YOUR STATUTORY CONSTRUCTION?

20             MR. TOSCHER:  THAT'S CORRECT, YOUR HONOR.

21             UNDER THE REGULATION IN ORDER FOR THE S
22   CORPORATION, SANTA CLARA, TO BE DISQUALIFIED UPON
23   THE ISSUANCE OF THE WARRANTS, TWO REQUIREMENTS.

24             ONE, YOU MUST BE SUBSTANTIALLY CERTAIN
25   THAT WARRANT WAS GOING TO BE EXERCISED.  AND TWO,

```
 1    IT MUST BE -- IT MUST HAVE BEEN ISSUED AT THE PRICE
 2    SUBSTANTIALLY LOWER THAN THE VALUE --
 3              THE COURT:  I'M SORRY, I DIDN'T ASK MY
 4    QUESTION VERY WELL.
 5              THERE'S SUBSECTION II AND SUBSECTION III.
 6    AND AS I UNDERSTAND YOUR STATUTORY CONSTRUCTION
 7    ARGUMENT, YOU ARE SAYING THAT III IS A REFINEMENT
 8    OF II.
 9              IN OTHER WORDS, IT'S NOT ENOUGH THAT
10    THERE BE TWO CLASSES OF STOCK OR SECURITY, THERE
11    ALSO HAS TO BE A PARTICULAR CHARACTERISTIC OF THE
12    WARRANT IN THIS CASE.
13              MR. TOSCHER:  YOUR HONOR, THAT'S CORRECT.
14              IN TALKING ABOUT (II) WHICH IS A
15    THRESHOLD ISSUE, WHETHER IT EVEN APPLIES TO
16    WARRANTS.
17              WE DON'T THINK IT DOES, (II) BY
18    CONSTRUCTION OF THE REGULATION, I COULD POINT OUT
19    NUMEROUS EXAMPLES POINTED TO DEBT, EQUITY TYPE
20    ISSUES, NOT TO WHETHER A WARRANT IS A SECOND CLASS
21    OF STOCK.  THAT HAS ITS OWN REGULATION, AND THAT'S
22    (III).
23              THE COURT:  SO (II) YOUR VIEW IS THE
24    GOVERNMENT CANNOT RELY UPON THAT FOR ANYTHING, THAT
25    SINCE WE ARE TALKING ABOUT WARRANTS, THEY COULD
```

1   ONLY RELY ON (III).  (III), IS THE EXCLUSIVE

2   TREATMENT OF WARRANTS IN THIS PARTICULAR STATUTE

3   AND THAT THE WARRANTS HAVE TO BE SUBSTANTIALLY

4   CERTAIN TO BE EXERCISED, CORRECT?

5           MR. TOSCHER:  THAT'S CORRECT, YOUR HONOR.

6           THE COURT:  AND THE POSITION BEING TAKEN

7   BY THE GOVERNMENT IS THESE PROVISIONS ARE SEPARATE

8   THINGS, IT'S SOMETHING TO QUALIFY A WARRANT AND

9   QUALIFY UNDER (II) WITHOUT QUALIFYING UNDER (III).

10          MR. TOSCHER:  THAT'S THE POSITION,

11  YOUR HONOR.

12          THE COURT:  ALL RIGHT.

13          ANYTHING ON THAT?  I JUST WANTED TO

14  DEFINE THE ISSUE.

15          MR. DARMSTADTER, III:  YES, YOUR HONOR.

16          I THINK THAT PRETTY MUCH DOES DEFINE THE

17  ISSUE.

18          WE FEEL VERY STRONGLY THAT (II) DOES

19  APPLY TO THE INSTRUMENTS THAT WERE ISSUED IN THIS

20  CASE.  THERE WAS NO OTHER PURPOSE FOR THESE

21  INSTRUMENTS OTHER THAN TO SEPARATE THE EQUITY FROM

22  THE --

23          THE COURT:  RIGHT.  BUT WE ARE TALKING

24  ABOUT STATUTORY CONSTRUCTION, BECAUSE THE ONLY

25  REFERENCE TO WARRANTS IS IN (III), CORRECT?

1          MR. DARMSTADTER, III:  WELL, THE ONLY --

2          THE COURT:  THE WORD "WARRANTS" IS ONLY

3    USED THERE.

4          MR. DARMSTADTER, III:  IT'S ONLY USED

5    THERE, BUT WE BELIEVE THAT THESE WERE WARRANTS

6    REALLY ONLY IN FORM AND NOT IN SUBSTANCE.

7          THE COURT:  RIGHT.  NO, I UNDERSTAND YOUR

8    ARGUMENT.

9          YOU ARE SAYING THE COURT SHOULDN'T GET

10   TOO BOTHERED BY THAT, THAT WHAT THE COURT SHOULD

11   LOOK AT IS THE REALITY OF THE INTEREST THAT WAS

12   CREATED AND DECIDE WHICH OF THESE SECTION IT FALLS

13   UNDER.

14         MR. DARMSTADTER, III:  AND (II) IS ABOUT

15   AS BROAD AS IT COULD BE IN TERMS OF TRYING COVER

16   ANY INSTRUMENT.  IT'S KIND OF A REGULATOR'S CRY TO,

17   HEY, THIS IS WHAT WE WANT TO PREVENT.  AND WE THINK

18   THE UNDISPUTED FACTS SHOW THAT THAT'S EXACTLY WHAT

19   KPMG DID IN DESIGNING THESE WARRANTS SO THEY WOULD

20   PAY THE TAX SHELL GAME.

21         THE COURT:  WELL, I HAVE QUESTIONS FOR

22   BOTH OF YOU AND YOU CAN BOTH BE SEATED IF YOU LIKE.

23         I HAVE SPECIFIC QUESTIONS THAT GO TO THIS

24   STATUTORY CONSTRUCTION ISSUE.

25         AND THE QUESTION I HAVE FOR THE

GOVERNMENT IS, IT SEEMS TO ME WHAT THE FAMILY WAS
LOOKING FOR HERE IS A SITUATION WHERE THEY WOULDN'T
HAVE TO EXERCISE THE WARRANTS.

IN OTHER WORDS, THE WARRANTS WERE THEIR
SECURITY IN THE EVENT THAT SOMETHING WENT AWRY WITH
THE MANAGEMENT OF THE COMPANY.

NOT ONLY IS THERE NO CERTAINTY OR
SUBSTANTIAL CERTAINTY THAT THE WARRANTS WOULD BE
EXERCISED, BUT THE WHOLE IDEA IS THEY WOULD NEVER
BE EXERCISED.

IS THERE SOMETHING WRONG WITH THE VIEW?
BECAUSE IT SEEMS TO ME THAT'S WHAT THE FACTS ARE.

MR. DARMSTADTER, III:  YOUR HONOR, THAT
APPLIES TO (III), THE SUBSTANTIAL CERTAINTY.

AND I HOPE WE WERE ABLE TO EFFECTIVELY
DEMONSTRATE JUST HOW IN THE MONEY, TO USE A TERM OF
ART, THESE WARRANTS ARE.

IN OTHER WORDS, HOW MUCH FREE MONEY
ESSENTIALLY THE EXERCISER OF WARRANTS WOULD GET
UPON THEIR EXERCISE.

WE BELIEVE THAT KPMG SPECIFICALLY GAINED
THE SUBSTANTIAL CERTAINTY PART OF THE REGULATION,
THE TEST REQUIRES THAT YOU CONSIDER ALL THE FACTS
AND CIRCUMSTANCES, AND ONE IS HOW DEEPLY THEY ARE
IN THE MONEY.

1     IT'S LIKE LEAVING, YOU KNOW, A $50 BILL

2  ON THE GROUND, ULTIMATELY SOMEBODY IS GOING TO PICK

3  IT UP.  AND THERE'S AN ECONOMIC COMPULSION, WE

4  BELIEVE, FROM THE OBJECTIVE STANDARD THAT IF YOU

5  CAN INSTANTLY GET MONEY THROUGH EXERCISE OF THE

6  WARRANTS, THAT YOU WOULD GO AHEAD AND DO IT.

7     THE COURT:  WELL, LET ME SEE IF I'M

8  HEARING YOU CORRECTLY BECAUSE THIS IS PRETTY

9  TECHNICAL.

10     THE WHOLE DESIGN WAS THAT THEY WOULDN'T

11  EVER HAVE TO ACTUALLY EXERCISE THE WARRANTS BECAUSE

12  THE WARRANTS WOULD BE SO VALUABLE THAT THEY WOULD

13  GET THEIR INTEREST BACK WHETHER OR NOT THE WARRANTS

14  WERE EXERCISED.  THERE WOULD BE NO REASON FOR THE

15  VOTING SHARES NOT TO REINSTATE THE MONEY INVESTED.

16  BECAUSE THE EFFECT OF NOT DOING SO WOULD BE

17  UNTENABLE.

18     SO THEREFORE, JUST THE MERE THREAT THAT

19  THE WARRANTS COULD BE EXERCISED WAS ENOUGH.

20     IS THAT YOUR THEORY?

21     MR. DARMSTADTER, III:  AS PART OF THE S,

22  C SQUARED ARRANGEMENT THERE WAS AN UNDERSTANDING

23  THAT THE WARRANTS WOULD BE TAKEN INTO ACCOUNT IN

24  TERMS OF THE VALUATION OF WHAT WAS TRANSFERRED TO

25  THE PENSION PLAN.

1          AND WHEN THEY WENT TO APPRAISE THE VALUE

2     OF THE STOCK THAT WAS TRANSFERRED TO THE PENSION

3     PLAN, BOTH AT THE TIME OF DONATION, AT THE TIME OF

4     REDEMPTION, THEY TOOK INTO ACCOUNT AS IF THE

5     WARRANTS WERE EXERCISED --

6          THE COURT:  RIGHT.

7          SARAH FRAZER, I MEAN, SHE WAS VERY CLEAR

8     ABOUT IT, SHE WAS A HUNDRED PERCENT CERTAIN THESE

9     WARRANTS WOULD BE EXERCISED BECAUSE TO DO SO WOULD

10    BE TO BASICALLY THROW AWAY MONEY.

11         SO WE THINK THAT THE PROPER WAY TO VIEW

12    THAT IS AS A LEGAL IMPEDIMENT.  IN OTHER WORDS, ARE

13    THE WARRANTS DEEP IN THE MONEY, AND IS THERE SOME

14    STRONGER REASON AS TO WHY SOMEBODY WOULDN'T

15    EXERCISE THESE WARRANTS?

16         AND IF THEY ARE GOING TO TAKE INTO

17    ACCOUNT FOR PURPOSES OF VALUATION, THE WARRANTS, IN

18    THEIR PURE DILUTED EFFECT WHICH BASICALLY DESTROYS

19    THE VALUE OF THE SHARES HELD BY THE PENSION PLAN,

20    THEN WE THINK THAT PART OF THE REQUIREMENT IS

21    SATISFIED.

22         IN OTHER WORDS, THEY'VE TRIED TO

23    CIRCUMVENT THE REGULATION BY SAYING, WELL, IF WE

24    ALL PRETEND THAT THE WARRANTS ARE GOING TO BE

25    EXERCISED THEN WE REALLY DON'T HAVE TO EXERCISE.

```
 1              THE COURT:  GOT YOU.

 2              IN OTHER WORDS, I DON'T HAVE TO SHOOT THE

 3    GUN IN ORDER TO PUT THE FEAR OF DEATH IN YOU.  AS

 4    LONG AS I POINT THE GUN AT YOUR HEAD.

 5              IT'S A CRUDE EXAMPLE, BUT THAT'S HOW YOU

 6    ARE CHARACTERIZING THESE WARRANTS, CORRECT?

 7              MR. DARMSTADTER, III:  THAT'S HOW WE ARE

 8    CHARACTERIZING THE WARRANTS.

 9              THEY HAD TO BE TAKEN INTO ACCOUNT FOR

10    PURPOSES OF DILUTION.

11              AND YOUR HONOR, THE PURPOSE OF THESE

12    WARRANTS IS -- WAS CLEAR.  IT WAS SIMPLY TO

13    MISALLOCATE INCOME FROM, IN ORDER TO --

14              THE COURT:  I UNDERSTAND YOUR THEORY.

15              YOU ARE SAYING THAT THE QUESTION OF

16    WHETHER THE WARRANTS ACTUALLY WOULD BE PHYSICALLY

17    EXERCISED, WHETHER THE FAMILY MEMBERS WOULD SAY

18    HERE WE ARE EXERCISING THE WARRANTS, BECAUSE OF THE

19    WAY THAT THE DEAL WAS CONSTRUCTED, THEY DIDN'T NEED

20    TO DO THAT.

21              MR. DARMSTADTER, III:  THEY WERE

22    EFFECTIVELY EXERCISED.

23              THE COURT:  RIGHT.  THE FACT THAT THE

24    WARRANTS EXISTED WAS ENOUGH.

25              AND THAT IS YOUR THEORY UNDER (III).  AND
```

1    YOUR THEORY UNDER (II) IS THAT EVEN IF YOU DON'T

2    CONSTRUE IT THAT WAY, THIS CLEARLY WAS AN EQUITY

3    INTEREST AND IT WAS COVERED BY (II).

4              MR. DARMSTADTER, III:  CORRECT,

5    YOUR HONOR.

6              THE COURT:  ALL RIGHT.

7              LET ME GET THE RESPONSE FROM SANTA CLARA

8    ON THAT.  BECAUSE IT SEEMS TO ME THE GOVERNMENT'S

9    GOT SOME FACTS TO SUPPORT WHAT COUNSEL JUST SAID,

10   SO HOW DO YOU DEAL WITH THAT.

11             MR. TOSCHER:  YES, YOUR HONOR.

12             ON (III), I THINK THE PRESENCE OF THE

13   WARRANT NEEDS TO BE TAKEN INTO ACCOUNT FOR

14   VALUATION PURPOSES.  BUT THE REGULATION CLEARLY

15   TALKS ABOUT AN EXERCISE OF THE WARRANT NOT THE

16   EXISTENCE OF THE WARRANT.

17             AND VALUATION OR CONSIDERING IT FOR

18   VALUATION IS SOMETHING ENTIRELY DIFFERENT.  IF YOU

19   LOOK AT THE LANGUAGE OF THE REGULATION, IT SAYS IT

20   WOULD BE EXERCISED, SUBSTANTIALLY CERTAIN TO BE

21   EXERCISED, NOT THE EXISTENCE OF THE WARRANT.

22             SO WHILE I THINK THE GOVERNMENT'S

23   ARGUMENT REALLY HAS NO SUPPORT IN THE CONTEXT OF

24   THE REGULATION, IT JUST SIMPLY DOESN'T.

25             THE COURT:  SO YOU READ THE REGULATION

LITERALLY, THAT MEANS YOU WIN ON THREE, BUT THEN

WHY WOULDN'T TWO BE SUFFICIENT TO BE A CATCH ALL?

BECAUSE CLEARLY THESE WARRANTS HAVE

VALUE, THEY AREN'T JUST SOMETHING THAT IS FLOATING

OUT THERE.  THE REASON THAT THEY EXIST, IT SEEMS TO

ME FROM THE UNDISPUTED FACTS, IS TO GIVE YOUR

CLIENTS A MEANS FOR RE COOPING THEIR INVESTMENT.

MR. TOSCHER:  THEY ARE PROPHYLACTIC

MEASURES YOUR HONOR, THAT'S CORRECT.

I GUESS IF ONE READS THE REGULATION, ONE

WOULD HAVE TO REALLY CONTORT OR STRETCH (II) TO

COME TO ITS APPLICATION.  JUST BITE INSTRUCT I, THE

REGULATION ITSELF, IT APPLIES TO DEBT LIKE

INSTRUMENTS.

THERE ARE TWO REFERENCES IN THE

REGULATION ITSELF BOTH UNDER, I THINK, (I) AND

LITTLE FOUR, ROMAN NUMERAL, WHICH BY ITS STRUCTURE

MAKE CLEAR THAT IT DOESN'T APPLY TO WARRANTS.

LITTLE (I) SAYS, "UNDER NO CIRCUMSTANCES

WILL (II) APPLY IF THE SAFE HARBOR IS MET."  HOW

COULD THERE BE A SAFE HARBOR FOR WARRANTS

STRUCTURED IF (II) COULD OVERRULE THAT?

THE COURT:  WHAT COUNSEL IS SAYING IS

THESE ARE WARRANTS IN NAME ONLY.  HE'S SAYING YOU

HAVE TO LOOK THROUGH THE FORM AND LOOK THROUGH THE

SUBSTANCE OF WHAT'S BEING DONE.

AND THE GOVERNMENT IS SAYING THESE CLEARLY ARE, THEY AREN'T JUST PROPHYLACTIC, THEY ARE EQUITY INTERESTS THAT DON'T HAVE TO BE ASSERTED BECAUSE OF THE UNDERSTANDING THAT EXISTED AT THE TIME THEY WERE CREATED BUT THEY CERTAINLY COULD BE ASSERTED AND THEY WOULD GET BACK ALL THE MONEY THEY PUT IN.

MR. TOSCHER: AND I THINK THAT'S THE FUNDAMENTAL FLAW IN THE GOVERNMENT'S POSITION, YOUR HONOR, IS ALL WARRANTS HAVING EQUITY COMPONENT.

IT'S AN OPTION TO BUY ON THE UP SIDE. THEY CLEARLY HAVE AN EQUITY COMPONENT. BUT THE TAX LAW FOR MANY YEARS HAS DISTINGUISHED BETWEEN A WARRANT WHICH DOES HAVE AN EQUITY COMPONENT AND STOCK OWNERSHIP. THOSE ARE TWO SEPARATE ISSUES.

THAT ISSUE WAS JOINED WHEN THEY FIRST PROMULGATED THIS REGULATION. AND THEY FINALLY CAME OUT WITH THE COMPROMISE OR DEVELOPMENT OF THIS REGULATION WHICH SAID WE WOULD ALLOW WARRANTS FOR S CORPORATIONS EVEN THOUGH WE COULD STORE EQUITY VALUE, PROVIDED YOU MEET THESE TWO REQUIREMENTS OR DON'T -- THAT DON'T FALL AFOUL OF THESE TWO OR YOU CAN COMPLY WITH THE SAFE HARBOR PROVISION.

```
 1              THE COURT:  OKAY.  ALL RIGHT.

 2              SO TELL ME WHY UNDER THE FACTS THAT ARE

 3    PRESENTED HERE IN THE ARGUMENT WE'VE JUST BEEN

 4    ENGAGING IN, THAT YOUR CLIENT IS ENTITLED TO

 5    SUMMARY JUDGEMENT THAT THIS WAS ALL ABOVE BOARD AND

 6    FINE AND THERE'S NO ISSUE OF FACT AS TO WHETHER

 7    THIS WAS AN ABUSIVE PRACTICE.

 8              MR. TOSCHER:  OKAY.

 9              LET ME START WITH THE SECOND CLASS OF

10    STOCK ISSUE, YOUR HONOR, WHY WE ARE ENTITLED.

11              I THINK BASED UPON ALL THE FACTS, THE

12    UNDISPUTED FACTS, IT WAS NOT SUBSTANTIALLY CERTAIN

13    THAT THESE WARRANTS WOULD BE EXERCISED.

14              AND IF THE COURT COULD FIND THERE'S NO

15    FACTUAL DISPUTE ON THAT, WE ARE ENTITLED TO

16    JUDGMENT UNDER WHAT WE BELIEVE IS THE CORRECT

17    INTERPRETATION.

18              THE COURT:  ON THIS C CORP VERSUS S CORP?

19              MR. TOSCHER:  YOUR HONOR, I WANT TO PUT

20    THAT ASIDE AND NOW I'M HAPPY TO ADDRESS THE ISSUE.

21              PLAINTIFF BOWES, IN RESPONDING TO, WELL

22    THE GOVERNMENT HAS ASSERTED IF IT IS AN S

23    CORPORATION THAT THE ALLOCATION OF INCOME SHOULD

24    NOT BE ALLOCATED 90 10.

25              WE START FROM THE PREMISE, AND THIS IS A
```

VERY CAREFULLY DEVELOPED TAX STRUCTURE, THAT INCOME

IN AN S CORPORATION IS ALLOCATED BASED UPON SHARE

OWNERSHIP.  ABSOLUTELY CLEAR.  YOU CAN'T CONSIDER

DIFFERENT VALUATIONS OF INTERESTS.  IT'S ATTEMPTED

TO BE STRAIGHTFORWARD BASED UPON SHARE OWNERSHIP.

WE COULD STOP RIGHT THERE.  BUT THE

GOVERNMENT SAYS, NO, THEY DON'T REALLY, THEY CAN'T

DISPUTE THAT BECAUSE THE STATUTE IS CLEAR, THE

SUPREME COURT SAID YOU READ THE STATUTE IN GITLITZ.

BUT THE ARGUMENT IS WELL, THE L.A. PLAN

WAS REALLY NOT THE OWNER FOR TAX PURPOSES.

THE COURT:  IT WAS A PARKING PLACE.

MR. TOSCHER:  A PARKING PLACE.

AND THAT GETS THE QUESTION OF WHETHER,

ONE, AND I THINK THERE'S REALLY TWO THEORIES.

UNDER, WERE THEY THE BENEFICIAL OWNER, WE DON'T

DISAGREE WITH THE GOVERNMENT UNDER THE BENEFITS AND

BURDEN TEST.

OR TWO, I GUESS THE COURT COULD APPLY THE

SHAM THEORY, WE DON'T THINK IT APPLIES AND THAT'S

WHY WE MOVE FOR SUMMARY JUDGEMENT ON THE ISSUE

BASED UPON THE FACTS.

LET ME JUST ADDRESS ONE THING,

YOUR HONOR.

THE GOVERNMENT POINTS TO THIS PARKING LOT

COMMENT.  IF ONE READS THE ENTIRE TRANSCRIPT,
WHICH, OF THOSE MINUTES OF THE L.A. PENSION PLAN,
IT IS ABSOLUTELY CLEAR THEY VIEW THEMSELVES AS AN
OWNER OF THE STOCK.

      IT WAS A FLIPPANT REMARK IN THE SAME
MEETING THE COMMISSIONER WHO SAID IT TALKED ABOUT
WHETHER THE PROFITS THAT THEY WOULD MAKE ON SANTA
CLARA MIGHT GET SKIMMED OFF BY THE CITY OF L.A.
BECAUSE IT WOULD INTERFERE WITH THEIR PENSION
CONTRIBUTION.

      SO JUST LIKE THERE WAS NO SKIMMING, I
THINK THAT'S ONE WORD TAKEN OUT OF CONTEXT AND I
THINK ONE HAS TO EVALUATE, WHAT DID THEY HAVE?

      THE COURT:  ALL RIGHT.

      SO WHEN THE SHARES WERE WITH THE PENSION
PLAN, DID THOSE SHARES PRODUCE INCOME?  WAS THAT
MONEY PRODUCTIVE?

      MR. TOSCHER:  YOUR HONOR, DURING THE
THREE AND A HALF YEARS SANTA CLARA WAS EARNING
INCOME, WHEN THE MARKET TOOK OFF RIGHT AFTER THE
DOT COM BUST.

      THE COURT:  RIGHT.

      MR. TOSCHER:  AND EARNING A LOT OF
INCOME, BUT THAT INCOME WAS NOT DISTRIBUTED TO
THEM.  BUT THE INCOME IN AN S CORPORATION IS

1  ALLOCATED BASED UPON SHARE OWNERSHIP.

2          THE COURT:  SO -- BUT WHAT I GUESS WHAT

3  I'M GETTING AT -- SO DID THE PENSION PLAN ACTUALLY

4  GET INCOME FROM THE FACT THAT THEY HELD THOSE

5  SHARES?

6          MR. TOSCHER:  WELL, THERE WERE

7  DISTRIBUTIONS, BUT COMPARED TO THE INCOME THEY WERE

8  SMALL DISTRIBUTIONS, BUT THEY DID GET SOME INCOME

9  AND THEY APPRECIATE IT.  THEY PARTICIPATED IN THE

10  SUBSTANTIAL APPRECIATION OF THE STOCK FROM THE TIME

11  IT WAS CONTRIBUTED TO THAT, FROM THE TIME IT WAS

12  REDEEMED.

13          THE COURT:  RIGHT.  BUT THAT'S WHAT I'M

14  TRYING TO FIGURE OUT.

15          WHAT DID THE PENSION PLAN, AND I DON'T

16  MEAN TO BE FLIP HERE, BUT WHAT IS THE RENT THEY GOT

17  FROM THE PARKING PLACE?  I MEAN IF YOU --

18          MR. TOSCHER:  DO I HAVE TO ANSWER THAT?

19          NO, YOUR HONOR.

20          WHAT DID THE PENSION PLAN RECEIVE FROM

21  SANTA CLARA?  I BELIEVE THERE WERE DIVIDEND

22  DISTRIBUTIONS OF A FEW HUNDRED THOUSAND, 2 TO

23  300,000, I MAY BE OFF THERE.

24          AND ULTIMATELY WHEN THEY TENDERED THE

25  STOCK FOR REDEMPTION THEY RECEIVED 1.4 OR 56

```
 1    MILLION.
 2             THE COURT:  SO THEY DID RECEIVE VALUE.
 3    IT WAS NOT A SHAM TRANSACTION IN THE SENSE THAT
 4    THEY GOT NOTHING FOR IT.
 5             MR. TOSCHER:  THAT'S CORRECT, YOUR HONOR.
 6             THE COURT:  THANK YOU.
 7             ANYTHING FURTHER YOU WANT TO SAY BEFORE I
 8    GET A RESPONSE FROM THE GOVERNMENT?
 9             ALL RIGHT.  THANK YOU.
10             MR. DARMSTADTER, III:  YOUR HONOR, IT WAS
11    $200,000 THAT THE PENSION PLAN GOT IN TERMS OF
12    MONEY BEING DISTRIBUTED.  AND THAT WAS ESSENTIALLY
13    PART OF THE REDEMPTION AGREEMENT WHEREBY IF THEY
14    AGREED TO HOLD ON TO THE STOCK FOR ANOTHER YEAR
15    THEY WOULD GET THAT AMOUNT OF THE PAYMENT.
16             IT HAD NO RELATIONSHIP WHATEVER TO WHAT
17    WAS GOING ON IN SANTA CLARA.
18             THE COURT:  IS IT FAIR TO SAY THE WAY YOU
19    SEE THE CASE IS THAT SANTA CLARA NEEDED A PLACE TO
20    PUT THE SHARES SO THAT THEY WOULD NOT HAVE THEY
21    WOULDN'T BE TAXABLE AND THEY PAID A FEE TO THE
22    PENSION FUND WHICH WAS ON THE ORDER OF A COUPLE
23    HUNDRED THOUSAND DOLLARS.
24             IS THAT THE WAY YOU SEE WHAT ACTUALLY
25    HAPPENED?
```

1          MR. DARMSTADTER, III:  THAT'S EXACTLY HOW

2     WE SEE WHAT HAPPENED.  AND WE PROVIDED THE COURT

3     WITH A LOT OF, INCLUDING THE MINUTES WHICH ARE VERY

4     ILLUMINATING, THE MINUTES BETWEEN THE KPMG AND THE

5     COMMISSIONERS OF THE PENSION PLAN.

6          AND THE COURT SHOULD UNDERSTAND THAT THIS

7     IS A DEFINED BENEFIT PENSION PLAN, THEY ARE NOT

8     USED TO RECEIVING GIFTS.

9          SO THIS WAS SOMETHING VERY UNUSUAL TO

10    THEM, AND KPMG APPROACHED THEM AND BASICALLY

11    EXPLAINED THE TRANSACTION THAT YOU WILL ACCEPT THIS

12    STOCK FOR A PERIOD OF TIME, THAT WE WILL PAY YOU A

13    MINIMUM PAYMENT, GUARANTEED MINIMUM PAYMENT.  AND

14    THEN AT THE END OF THE TIME PERIOD, WE WILL -- YOU

15    CAN REDEEM THE STOCK AND MAYBE YOU WILL GET

16    SOMETHING EXTRA.  BUT IT WAS ALWAYS THE ORIGINAL

17    SHAREHOLDERS.

18          IF YOU LOOK AT THE REDEMPTION AGREEMENT,

19    THAT WOULD DECIDE WHAT THAT EXTRA AMOUNT WOULD BE.

20    AND THAT'S EXACTLY HOW THE L.A. PENSION PLAN

21    TREATED THESE STOCK CERTIFICATES.  THEY DIDN'T

22    TREAT THEM AS THEY TREAT OTHER ASSETS.

23          AND HERE WE HAVE A STARK DIFFERENCE

24    BETWEEN A PENSION PLAN AND ITS OFFICERS WHO HAVE

25    FIDUCIARY DUTIES TO MANAGE ASSETS AND NEEDS.

THEY NEVER PAID ANY HEED TO THEM, THEY
NEVER ACTED LIKE AN EQUITY OWNER.  THEY HELD THEM
FOR ZERO VALUATION.  AND WHEN IT CAME TIME FOR
REDEMPTION, AT LEAST PRIOR TO THE SENATE CONTACTING
THE PENSION PLAN AND TELLING THEM, YOU KNOW --

THE COURT:  THIS IS NOT OKAY.

MR. DARMSTADTER, III:  THIS IS NOT OKAY.

THEY BASICALLY -- KPMG WOULD NOTIFY THEM
ITS REDEMPTION TIME AND THEY RETRIEVED THE STOCK
THEN THEY WOULD GET THEIR PAYMENT.

IT WAS NOT IN ANY WAY APPROACHING AN
EQUITY OWNERSHIP INTEREST OR A 90 PERCENT EQUITY
OWNERSHIP.

THE COURT:  THEY NEVER ACTED AS REAL
OWNERS, IS YOUR VIEW.

MR. DARMSTADTER, III:  NO, THEY DIDN'T.

AND, YOU KNOW, WE ARE NOT JUST SAYING
THAT, YOU KNOW, THEY DIDN'T -- THEY DIDN'T, YOU
KNOW, GO TO SHAREHOLDER MEETINGS AND ALL OF THAT.

THEY DIDN'T ACT IN ANY WAY, SHAPE OR FORM
AS AN OWNER AS OPPOSED TO THEIR OTHER ASSETS WHICH
THEY CAREFULLY MANAGE AND HAD FIDUCIARY
RESPONSIBILITIES OVER.

THE COURT:  SO THE PENSION FUND HAD
PEOPLE WHO MANAGE THEIR INVESTMENTS AND WHO DID SO

IN AN ACTIVE, HANDS-ON WAY BUT NOT WITH RESPECT TO THESE SHARES.

MR. DARMSTADTER, III: THIS PENSION PLAN HAD MILLIONS OF DOLLARS UNDER MANAGEMENT AND THEY TREATED THOSE ASSETS COMPLETELY DIFFERENTLY THAN THEY TREATED THIS -- IT WAS TREATED AS A PROGRAM, WHERE ESSENTIALLY THEY WOULD CALENDAR THE DATE OF REDEMPTION, AND KPMG WOULD CALL, THEM UP SOMETIMES THEY WOULD GET THE DIVIDENDS TO EXTEND THE PERIOD OF TIME.

THE COURT: SO THIS WAS SORT OF A LOW IMPACT WAY OF GETTING SOME ADDITIONAL FEES.

MR. DARMSTADTER, III: THAT'S RIGHT.

I MEAN, IN FACT THE SCHOTT ORGANIZATION, MR. SCHOTT EVEN CHARACTERIZED THE PAYMENTS OF THE PENSION PLAN AS A FEE.

THE COURT: ALL RIGHT. OKAY.

MR. DARMSTADTER, III: NOW WITH RESPECT TO THE WARRANTS, YOUR HONOR, I THOUGHT AT LEAST ONE OF THE MOST USEFUL THINGS TO KIND OF GO OVER THE DAMAGE THAT WAS DONE TO THE OUTSTANDING SHARES BY REASON OF THE CREATION OR THE ISSUANCE OF THESE WARRANTS JUST TO KIND OF MAKE SURE THAT THAT REALLY IS CLEAR, AND WE ARE USING PLAINTIFF'S OWN APPRAISAL OF THAT WHICH IS $1.7 MILLION. THAT WAS

WHAT MESIROW OR WENDY SHARON WHEN SHE APPRAISED
SANTA CLARA AT THE TIME OF DONATION.

AND AT THAT POINT IN TIME THERE WERE A
THOUSAND SHARES OF STOCK OUTSTANDING OF WHICH THEY
WERE GOING GIVE 90 OR 900 TO THE PENSION PLAN.  AND
EACH SHARE OF STOCK WOULD HAVE BEEN WORTH OVER
$1,700.

HOWEVER, AFTER THE WARRANTS WERE ISSUED,
THE VALUE OF THOSE OUTSTANDING SHARES WENT FROM
$1,700 DOWN TO HUNDRED 81 DOLLARS.  AND THE ONLY
REASON FOR THAT WAS THE ISSUANCE OF THESE WARRANTS.

THAT I THINK IS A DEMONSTRATIVE WAY TO
ESTABLISH HOW MUCH EQUITY WAS LITERALLY TRANSFERRED
FROM THE OUTSTANDING STOCK TO THE WARRANTS.

THE COURT:  JUST, CAN YOU WALK ME THROUGH
THE ARITHMETIC AGAIN.

MR. DARMSTADTER, III:  SURE.

THE COURT:  BEFORE THE WARRANTS WERE
ISSUED SANTA CLARA WAS WORTH 1.7 MILLION.

MR. DARMSTADTER, III:  AND I SHOULD SAY,
YOUR HONOR, THE GOVERNMENT HAS RETAINED EXPERTS AND
WE BELIEVE THAT SANTA CLARA WAS WORTH $40 MILLION
OR THERE ABOUT.  SO THERE'S A HUGE DISCREPANCY.

THE COURT:  BUT WE ARE JUST TALKING ABOUT
BOOK VALUE OF --

```
 1              MR. DARMSTADTER, III:  RIGHT.

 2              THE COURT:  SO AT THAT POINT IT'S WORTH

 3    1.7 MILLION, AND THERE'S HOW MANY SHARES OF STOCK?

 4              MR. DARMSTADTER, III:  A THOUSAND SHARES

 5    OF STOCK OUTSTANDING.

 6              THE COURT:  ALL RIGHT.

 7              SO THE WARRANTS DILUTE -- YOUR THEORY IS

 8    THE WARRANTS DILUTE THE POOL OF EQUITY OWNERSHIP BY

 9    ADDING, I FORGET -- I MEAN, I CAN'T IMMEDIATELY DO

10    THE MATH BUT IT'S LIKE A 90 PERCENT, FACTOR OF

11    NINE.

12              MR. DARMSTADTER, III:  RIGHT.  FACTOR OF

13    NINE.

14              THEY COMPLETELY -- AND THERE HAS BEEN NO

15    REAL EXPLANATION, NO BUSINESS PURPOSES TO WHY SANTA

16    CLARA ISSUED WARRANTS.  CERTAINLY NO ONE WITHIN

17    SCHOTT ORGANIZATION HAS ANY EXPLANATION OF THE

18    ISSUANCE OF THE WARRANTS.  IT WAS ALL DONE BY KPMG

19    AS PART OF THE STRATEGY.  THERE WAS NO LEGITIMATE

20    BUSINESS PURPOSE.  AND OF COURSE CORPORATIONS CAN

21    ISSUE WARRANTS, THEY DO TO INCENTIVIZE EMPLOYEES --

22              THE COURT:  OR EVEN LEGAL TAX SHELTERS,

23    RIGHT?

24              MR. DARMSTADTER, III:  THAT'S TRUE,

25    YOUR HONOR.
```

```
 1          THERE MAY BE MANY LEGITIMATE REASONS TO

 2   ISSUE WARRANTS BUT IN THIS CASE THERE WERE NONE

 3   OTHER THAN TO TRANSFER THE EQUITY AND KEEP THAT

 4   WITH THE ORIGINAL SHAREHOLDERS WHILE THEY COULD DO

 5   THIS BAIT AND SWITCH GAME TO AVOID PAYING ON THE

 6   TAXES.

 7          THAT'S WHY WE FEEL SO STRONGLY THAT (II)

 8   APPLIES.  IT'S AN ANTI ABUSE PROVISION THAT

 9   SPECIFICALLY SHOULD APPLY WHEN A CORPORATION GOES

10   OUT OF ITS WAY TO CREATE THESE EQUITY-LIKE

11   INSTRUMENTS.

12          THE COURT:  RIGHT.  NO, I UNDERSTAND THE

13   ARGUMENT ABOUT HOW TO INTERPRET THE STATUTE AND I'M

14   JUST GOING TO HAVE TO MAKE A CALL ON IT.

15          SO I THINK I'VE GOT THE GOVERNMENT'S

16   VIEW.  ANYTHING FURTHER THAT --

17          MR. TOSCHER:  YOUR HONOR, JUST BRIEFLY ON

18   THE -- WHETHER THE PLAN WAS AN OWNER, ACTED LIKE AN

19   OWNER AND WHETHER SANTA CLARA TREATED THEM AS

20   OWNERS.

21          THE GOVERNMENT DISPUTES THAT, BUT I THINK

22   WHEN ONE BOILS DOWN TO THE FACTS OF WHAT HAPPENED

23   HERE, THEY WERE TREATED AS OWNERS.

24          WHAT THE GOVERNMENT IS TAKING ADVANTAGE

25   OF IN THE RHETORIC, IF YOU WILL, IS THE FACT THAT
```

THEY ARE NONVOTING SHAREHOLDERS.  NONVOTING
SHAREHOLDERS DON'T VOTE ON THINGS, THEY DON'T GET
ACTIVELY INVOLVED IN MANAGEMENT, THEY NEVER
INTENDED TO GET ACTIVELY INVOLVED IN MANAGEMENT.

THE INVESTMENT OFFICER OF THE L.A.
PENSION PLAN, THESE WERE SMALL INVESTMENTS OR SMALL
ASSETS OF THE MULTI BILLION DOLLAR PLAN THAT THEY
HAD.

AND THE GOVERNMENT'S ARGUING WELL,
BECAUSE THEY DIDN'T BOOK A VALUE, THAT 162,000 THAT
WAS CONTRIBUTED, THEN THEY WEREN'T TREATED AS
OWNERS.

BUT IF ONE READS THE TRANSCRIPTS BECAUSE
THEY DON'T BOOK IT THAT WAY BECAUSE IT'S A GIFT AND
THEY ARE NOT SURE WHAT'S GOING TO GET REALIZED AT
THE END.

THE COURT:  THEY DIDN'T BUY IT.

MR. TOSCHER:  THEY DIDN'T BUY IT.

IN FACT, ONE READS MR. LOPEZ'S TESTIMONY
THAT'S PROBABLY THE DIFFERENCE.  THEY DIDN'T BUY IT
AS A GIFT, THAT'S THE WAY THEY TREAT.

AND ADMITTEDLY, I THINK THE GOVERNMENT
DOES A REASONABLE EFFORT OF CLOUDING THE ISSUE.
BUT IF ONE LOOKS AT THE PURE FACTS OF A NONVOTING
SHAREHOLDER, WE SEEM TO HIT ALL THE BELLS AND

WHISTLES.

AND THE CASES RELIED UPON BY THE
GOVERNMENT ARE TOTALLY DIFFERENT AND OPPOSITE.
FAMILY SITUATIONS WHERE MOM AND DAD ARE BORROWING
OUT THE MONEY AND NEVER PAYING IT BACK.

SO I THINK THEY ARE THE OWNERS FOR TAX
PURPOSES.

ON THE WARRANTS, I UNDERSTAND THE
GOVERNMENT'S CONCERN WITH THE WARRANTS, BUT THIS
TRANSACTION WOULD HAVE NEVER BEEN STRUCTURED IF ONE
THOUGHT THE WARRANTS ATTEMPTED TO COMPLY.

THE COURT:  IF THEY RELIED UPON THE
LANGUAGE OF THE REGULATION IN STRUCTURING IT.

MR. TOSCHER:  THE SUPREME COURT RECENTLY
IN MAYO SAID WHEN THE IRS ISSUES A REGULATION, LIKE
CHEVRON IT'S EFFECTIVELY THE LAW.

THE COURT:  INTERESTING YOU BRING CHEVRON
UP BECAUSE DOESN'T THE IRS'S CURRENT VIEW OF THIS
TYPE OF TRANSACTION TAKE THE POSITION THAT IT'S
IMPROPER?

MR. TOSCHER:  OKAY.  THAT'S A WONDERFUL
QUESTION.  THERE'S A DIFFERENCE BETWEEN.

THE COURT:  THEN AND NOW.

MR. TOSCHER:  TREASURY REGULATION AND THE
IRS'S VIEW, THE IRS'S LITIGATION OF ITS FINE

```
 1    LAWYERS TO THE DEPARTMENT OF JUSTICE.

 2              I THINK WHAT THE SUPREME COURT WAS

 3    GETTING AT IS IF YOU GO THROUGH THE REGULATORY

 4    PROCEDURE, THE ADMINISTRATIVE PROCEDURE ACT IN

 5    AREAS WHICH CONGRESS CAN'T MICRO MANAGE, YOU HAVE

 6    TO GIVE DEFERENCE TO THE ADMINISTRATOR.

 7              THAT DOESN'T GO DOWN TO BRIEFS IN COURT,

 8    RULINGS OR NOTICES.

 9              THE COURT:  NO, OF COURSE NOT.

10              YOU ARE SAYING THERES ISN'T ANYTHING

11    THAT'S ENTITLED TO THE CHEVRON DEFERENCE WITH

12    REGARD TO THESE PARTICULAR DECLARATIONS

13              MR. TOSCHER:  THE REGULATIONS ARE AND THE

14    REGULATIONS CLEARLY SUPPORT THE PLAINTIFF'S

15    POSITIONS IN THIS CASE.

16              THE COURT:  THE WORDS OF THE REGULATIONS.

17              MR. TOSCHER:  THAT'S CORRECT.

18              THE COURT:  BUT THERE ISN'T ANY

19    INTERPRETATION OF THE REGULATIONS TO WHICH THIS

20    COURT NEEDS TO DEFER, OR THERE HASN'T BEEN ANOTHER

21    CASE LIKE THIS.  THERE ISN'T A SITUATION WHERE

22    LOOKING AT THE WORLD AS IT EXISTED IN THE YEAR 2000

23    WE COULD GET ANY DIRECTION.

24              MR. TOSCHER:  YOU ARE CORRECT,

25    YOUR HONOR.  YOU ARE WRITING ON A CLEAN SLATE.
```

```
 1              THE COURT:  THANK YOU.

 2              THE BRIEFS WERE GREAT.  I THINK I'VE GOT

 3    ENOUGH TO WORK WITH.

 4              ANYTHING ELSE ANYONE WANTS TO SAY BEFORE

 5    WE WRAP UP?

 6              MR. DARMSTADTER, III:  YOUR HONOR, JUST

 7    ON THAT FINAL POINT, AND I'M SOMEWHAT SYMPATHETIC

 8    TO MR. TOSCHER'S ARGUMENT THAT THE GOVERNMENT COMES

 9    IN HERE AND SAYS, YOUR HONOR, INTERPRET THE

10    REGULATIONS --

11              THE COURT:  YOU CAN'T BE THE REGULATOR

12    AND THE PROSECUTOR.

13              MR. DARMSTADTER, III:  WE CAN'T.

14              AND WHAT I WOULD SAY TO THAT IS WE WOULD

15    ASK THE COURT TO INTERPRET THE REGULATION IN A WAY

16    THAT WOULD GIVE MEANING TO ITS PURPOSE IS TO

17    PREVENT A TRANSFER OF EQUITY, THESE IN THE MONEY

18    WARRANTS.

19              AND -- SO LET ME JUST FINISH OFF WITH

20    THAT THEN, YOUR HONOR.

21              THE COURT:  I THINK IT'S VERY WELL JOINED

22    AND I WILL TAKE MY TIME.

23              IT WILL PROBABLY BE A MONTH OR SO BUT I

24    WILL GET A RULING TO YOU SOON.

25              MR. DARMSTADTER, III:  AND WE APPRECIATE
```

1    THE COURT TAKING UP OUR TASK --

2              THE COURT:  I WOULDN'T HAVE WANTED TO DO

3    THIS ON MY FRIDAY CALENDAR.

4              AND GENERALLY WHEN I SEE A TAX CASE

5    COMING I RUN THE OTHER WAY, BUT THIS ONE IS

6    ACTUALLY VERY INTERESTING.

7              MR. DARMSTADTER, III:  THANK YOU,

8    YOUR HONOR.

9              MR. TOSCHER:  THANK YOU VERY MUCH,

10   YOUR HONOR.

11             (WHEREUPON, THE PROCEEDINGS IN THIS

12   MATTER WERE CONCLUDED.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22                      _____
                        SUMMER A. FISHER, CSR, CRR
23                      CERTIFICATE NUMBER 13185

24

25